642 A.2d 629

**Bonnie FRIGM, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 14, 1994.

Decided May 24, 1994.

284

John G. Bergdoll, for petitioner.

Sarah Yerger Nauss, for respondent.

Before COLINS and NEWMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Claimant Bonnie Frigm petitions for review of the May 6, 1993 order of the Unemployment Compensation Board of Review (Board), in which the Board affirmed the decision of the Referee to deny Claimant benefits due to willful misconduct under Section 402(e) of the Unemployment Compensation Law.[1]

The issues before us are: (1) whether substantial evidence supports the Board's conclusion that Claimant breached her employer's confidentiality rule by disclosing to a newspaper reporter information which her employer considered confidential; (2) whether a denial of benefits violates Claimant's right to free speech and; (3) whether Claimant's employer failed to

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). The Board denied Claimant benefits to the extent provided for in *Richards v. Unemployment Compensation Board of Review*, 85 Pa.Commonwealth Ct. 90, 480 A.2d 1338 (1984), a matter which is not raised on appeal.

follow its progressive disciplinary system in discharging her.[2]
We affirm.

## Background

The facts as found by the Board are summarized as follows.
Claimant last worked for Employer, Access–York, as a Child
Play Therapist from February 1988 to November 11, 1992.
Employer operates a battered women's shelter and requires
confidentiality from its employees. Claimant was aware of
Employer's confidentiality rule. In November 1992, a news-
paper reporter, who had knowledge of intimate details of one
of Employer's clients, contacted Employer. Employer was
concerned that a newspaper report containing such informa-
tion about the client could jeopardize the client's safety. The
Board found that on November 13, 1992, Claimant admitted to
Employer that she had given confidential information concern-
ing the client to the reporter. Claimant had been concerned
with Employer's handling of the client's case. The newspaper
did not publish the story. After a two-week suspension,
Employer discharged Claimant for a breach of confidentiality.
Claimant alleges that other employees had given confidential
information to the newspaper.

The Bureau of Unemployment Compensation Benefits and
Allowances issued a determination denying Claimant benefits
for willful misconduct. The Referee affirmed the Bureau's
decision. On appeal, the Board held that Employer had met
its burden of showing that Claimant was discharged for willful
misconduct due to her knowing breach of Employer's confi-
dentiality rules. The Board denied Claimant benefits, holding
that Claimant failed to establish good cause for her work-rule
violation.

On appeal to this Court, Claimant argues that there is
insufficient evidence in the record to support the Board's
finding that she breached Employer's confidentiality rule.

**2.** Our scope of review is limited to determining whether constitutional
rights were violated, whether an error of law was committed or
whether the findings of fact are supported by substantial evidence.
*Dingbat's v. Unemployment Compensation Board of Review,* 123
Pa.Commonwealth Ct. 73, 552 A.2d 1157 (1989).

Specifically, Claimant asserts that she gave the reporter only limited information, containing nothing confidential. In the alternative, Claimant contends that her breach of the confidentiality rule was justified because it was in the best interest of the client and the client's child. Further, Claimant argues that a denial of benefits violates her right to free speech. Additionally, Claimant argues that her single act of alleged misconduct does not render her ineligible for benefits because Employer did not follow its progressive disciplinary policy in discharging her.

The Board contends that the record shows that Claimant gave confidential information to the reporter which would have permitted identification of a specific mother and child at the shelter and that this disclosure would have compromised the anonymity of the clients involved. Because the information jeopardized the safety of the mother and child, the Board argues that Claimant's speech did not concern a matter of public interest within first amendment protection. Further, the Board argues that Claimant should have attempted to resolve the issue with Employer before approaching the press. Finally, the Board argues that Claimant's misconduct was a dischargeable offense under Employer's progressive disciplinary policy, which provides for disciplinary action up to immediate discharge for conduct, which in the opinion of the Executive Director or Board of Directors, makes the employee unfit for future service.

## Discussion

### I. Work Rule Violation

Under Section 402(e) of the Act, a claimant who is discharged for willful misconduct connected with his or her work is ineligible for unemployment compensation. 43 P.S. § 802(e). The employer bears the burden of proving willful misconduct. *County of Luzerne v. Unemployment Compensation Board of Review*, 148 Pa.Commonwealth Ct. 473, 611 A.2d 1335 (1992). In cases involving a work-rule violation, the employer must establish the existence of a reasonable work rule and the fact of its violation. *Williams v. Unemployment*

*Compensation Board of Review,* 141 Pa.Commonwealth Ct. 667, 596 A.2d 1191 (1991). The burden then shifts to the claimant to show good cause for his or her action. *Id.*

Employer's policy, of which Claimant was aware, prohibited disclosure of confidential information with respect to the identities and plans of clients. The policy did, however, permit disclosures necessary to accomplish a service plan or for a life-saving emergency.

■ Claimant does not dispute the reasonableness of Employer's policy. Claimant maintains that she did not reveal any information to the reporter which she considered confidential. Employer's Executive Director, however, testified as follows:

[Referee]:

> Let me ask you, ma'am, to present any statements that you might have come here, today, to mention, as to why [Claimant] is no longer with [Employer]. . . .

[Witness]:

> I received a phone call from a reporter, who proceeded to talk about a lot of situation, very intimate details, about a woman and her children who are in our shelter. And I was extremely surprised to here [sic] that information because confidentiality is our chief issue, pretty much, in the shelter, among employees and staff. And the reporter proceeded to tell me a great deal of very intimate information about a woman and her child, and questioned me as to why we chose to take certain actions in regards to dealing with this woman and her child. And I asked her, first of all, where she got that information. And, of course, she refused to tell me. And eventually, I ended the conversation by my saying that I am not at liberty to discuss anything involving a situation between the staff or between a woman and the staff. Because the woman's safety was certainly going to be jeopardized by that information, particularly in that the reporter was asking questions, and I assumed was planning on doing a story about this case. I was extremely upset about that. I had no idea where the woman got her

information. I went to work the next morning at my office and I received a phone message saying that [Claimant] had called me an [sic] left a message for me to call her back. When I did speak to [Claimant], I did call her back, she told me that she wanted to tell me that she had called the reporter and had given her the information. And at that point, I told her that I was extremely surprised and told [Claimant] that we would have to discuss it and that when she came into the office again we would talk about it. Then, I guess it was later that day—I guess I next saw [Claimant]—nothing was done at that point. And then when I saw [Claimant] when she next came into the office, I told her, asked her to again tell me what had happened. She told me that she had called the reporter and gave her the information and that she decided that she had no other choice at that time and decided that she was going to do that.

(N.T. at 6–7).

. . . .

[Claimant's representative]:

Okay. You mentioned again that the story gave intimate details about the mother and the child. How many other mothers and child's [sic] are there that would have six-year old children?

[Witness]:

Probably the only one that had the dynamics of that family.

[Claimant's representative]:

But do you know specifically the details that would have made those dynamics available, or that would have listed the facts that people would recognize that?

[Witness]:

I think that the dynamics of that child and the mother were so outstanding to me, and I don't know any women who are in the shelter. But I knew that as soon as she mentioned the family to me, I knew immediately who it was. And my concern was that if the batterer read the details, he may,

just may, not necessarily would, but may recognize that that was his wife and children that he was trying to find. (N.T. at 15) We also note that Claimant, in her initial discharge interview with the Job Center, reported the following facts:

> I talked to a newspaper reporter who called me—the same reporter that other staff members had talked to a couple of weeks before. I talked about situations at the agency. I did not give any information that *I thought* was confidential—I did not give the names of any of the residents. I just told of a situation that was going on at the shelter. I believe the director was offended that I talked to a reporter from the newspaper without talking with her first. Nothing was ever printed about this in the newspaper.

(Original Record, Item No. 3) (Emphasis added).

Due to confidentiality concerns, the Executive Director refused to specify any of the details concerning the client which Claimant allegedly disclosed to the reporter. The Executive Director's testimony reveals, however, that, although Claimant had not revealed the client's name, Claimant had revealed sufficient information to enable the client's batterer to identify the client and her location. Thus, a determination of whether Claimant revealed confidential information depends, first, upon the Board's credibility determination, and second, upon whether the evidence was sufficient to permit the Board to infer that it was Claimant who disclosed the information concerning the identity and location of the client to the reporter.

■ The Board resolved conflicts in the testimony in favor of Employer and found the Executive Director's testimony credible. We will not disturb the Board's credibility determination. We conclude, therefore, that the above evidence was sufficient to permit the Board to infer that it was Claimant who disclosed to the reporter factual details which would allow the identification of a specific agency client and her child. Therefore, we conclude that the Board did not err in finding that Claimant breached Employer's confidentiality rule.

■ Also, we are not persuaded by Claimant's argument that her disclosure of confidential information was warranted when, as the Executive Director indicated, the publication of such information could have jeopardized the safety of the client and her child.

## II. Free Speech

■■ We turn, therefore, to Claimant's argument that a denial of unemployment compensation violates her right to free speech as guaranteed by the first amendment of the United States Constitution. A state's denial of unemployment compensation benefits cannot be based on an individual's exercise of his/her first amendment rights absent a compelling State interest. *See, e.g., Wright v. Unemployment Compensation Board of Review,* 45 Pa.Commonwealth Ct. 117, 404 A.2d 792 (1979); *Bala v. Unemployment Compensation Board of Review,* 42 Pa.Commonwealth Ct. 487, 400 A.2d 1359 (1979). Where, as here, a claimant is discharged by a private employer, we are required to balance the claimant's interest in commenting upon a matter of public concern and the State's interest in protecting the unemployment compensation fund by disqualifying those individuals whose unemployment is due to willful misconduct. *Strong v. Unemployment Compensation Board of Review,* 73 Pa.Commonwealth Ct. 554, 459 A.2d 57 (1983); *Bala.* We must first, therefore, determine whether Claimant's speech is entitled to first amendment protection. Although Claimant's alleged motivation in contacting the reporter was to improve the agency's handling of the client's case, we believe that the furnishing of confidential information concerning the identity and location of a *specific* battered woman seeking shelter is *not* a matter of general public concern. To the contrary, the societal interest is in the protection of such persons from further potential abuse. Therefore, we conclude that here a denial of benefits does not infringe upon Claimant's first amendment rights.

## III. Progressive Discipline

■■ Thus, we turn to Claimant's final contention that she cannot be denied benefits because Employer failed to follow

its own progressive system of discipline. Claimant relies on the rule established by this Court that an employee's conduct cannot be considered willful misconduct for unemployment compensation purposes when the employer has not adhered to its own progressive disciplinary system in discharging the employee. *Looney v. Unemployment Compensation Board of Review,* 108 Pa.Commonwealth Ct. 308, 529 A.2d 612 (1987). Although, Employer has a progressive disciplinary system for minor employee misconduct, Employer's Personnel Policy also provides that a serious offense may warrant immediate discharge. We believe that Employer reasonably considered Claimant's breach of confidentiality in this case a serious offense; therefore, we find that Employer acted in compliance with its disciplinary policy in discharging her.

Accordingly, we affirm the May 6, 1993 order of the Board.

## ORDER

**AND NOW,** this 24th day of May, 1994, the order of the Unemployment Compensation Board of Review dated May 6, 1993 at No. B–311921 is hereby affirmed.