**Deborah ALSTON, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 2008.

Decided Feb. 19, 2009.

Reargument/Reconsideration Denied April 9, 2009.

Robert L. Simmons, Philadelphia, for petitioner.

Jonathan D. Koltash, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge,

FRIEDMAN, Judge[1], COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

Deborah Alston (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) affirming the decision of the Referee finding her ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law[2] because her actions towards her supervisor and co-workers were without good cause and constituted willful misconduct.

The following facts are not in dispute. From August 10, 1998, to February 22, 2007, the Pennsylvania Liquor Control Board (Employer) employed Claimant as a full-time liquor clerk. In December 2005, Claimant received a warning for conduct unbecoming of a commonwealth employee due to her use of profane language in the presence of customers. She was advised that any additional misconduct could result in her termination. In May 2006, Claimant received a second warning for conduct unbecoming a commonwealth employee because she directed loud, rude and argumentative remarks at a customer. Again, she was advised that she would be terminated from her employment for any further misconduct.

On December 3, 2006, Claimant and another co-worker engaged in an argument in front of customers at which time Claimant's supervisor directed that she and the co-worker stop. Claimant continued to argue with her co-worker despite the supervisor's directions. On December 23, 2006, Claimant argued with a customer because the customer had placed the money that he was using to make a purchase on the counter instead of placing it in Claimant's hand. When returning the customer's change, Claimant laid the money on the counter instead of placing it in the customer's hand. Claimant's supervisor directed her to place the change in the customer's hand, which she refused to do. Claimant's supervisor then placed the change in the customer's hand and apologized for the inconvenience. Finally, on December 24, 2006, Claimant used the "N" word during a conversation with another employee. [Note: All employees involved were apparently African–American.] After Employer investigated the events described above, Employer discharged Claimant citing conduct unbecoming a commonwealth employee.

Claimant filed for unemployment compensation benefits, but those benefits were denied because the Unemployment Compensation Service Center found her discharge was for willful misconduct without good cause for her actions. Claimant filed

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

2. Act of December 5, 1926, Second Ex. Sess. P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). That section provides:

An employe shall be ineligible for compensation for any week—

(e) in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

Willful misconduct has been defined as the wanton or willful disregard for an employer's interests; the deliberate violation of an employer's rules; the disregard for standards of behavior which an employer can rightfully expect of an employee; or negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Arnold v. Unemployment Compensation Board of Review,* 703 A.2d 582 (Pa. Cmwlth.1997).

an appeal, and a hearing was conducted before a Referee.

## I.

Before the hearing, Claimant attempted to obtain subpoenas for two assistant store managers to Roxanne Chambers (Chambers), Claimant's supervisor and the store's general manager. In her letter requesting the subpoenas, Claimant stated: "This request is needed as both Ms. Chambers' assistants witnessed first hand how Ms. Chambers prevented me from doing my work and also chose to single me out to write me up for things everybody else did as well." However, Claimant's request for the subpoenas was denied.

At the hearing, Employer called Sharon Cooper–Powell (Cooper–Powell), its assistant regional manager, and William Harter (Harter), the district manager, both of whom testified generally regarding the termination process. Cooper–Powell testified that Claimant was terminated on February 22, 2007, for conduct unbecoming a commonwealth employee that occurred on the following dates: December 3, 2006, December 23, 2006, and December 24, 2006, and that she had been disciplined in the past for similar infractions and warned that if she committed a similar infraction, she would be terminated pursuant to the disciplinary process. Harter testified that Chambers made him aware of Claimant's unbecoming conduct, and that he delivered the termination papers to Claimant during her shift at the store. In addition to the testimony described above, several documents were submitted as exhibits, including two letters from Employer detailing prior acts of conduct unbecoming a commonwealth employee dated December 21, 2005, and May 10, 2006.

As to the conduct that led up to the termination, Chambers testified that she observed Claimant's conduct on December 3, 2006, and December 23, 2006. As to the December 3, 2006 incident, she testified that when she came out of the restroom, she heard of lot of yelling and screaming and went to the front of the store where Claimant and another employee, Terry McMillan (McMillan), were arguing back and forth. Chambers testified that she asked what was going on and that McMillan told Claimant that it was her job to be in the front waiting on customers. Claimant responded that she could not tell her what to do because she was not her boss. Chambers testified that she told them that they had to be quiet or they would be written up for insubordination, but that Claimant had more to say while McMillan was quiet. Chambers testified that after this incident, she called Harter to inform him of the situation.

As to the December 23, 2006 incident, Chambers testified that she noticed Claimant at the counter arguing with a customer. Chambers testified that Claimant told her the customer did not put the money in her hand because he was paying for a purchase, and that when she told Claimant to take the money off of the counter and to put it in the drawer, Claimant seemed to have a problem with that direction. Chambers further testified that when it was time to give the customer back his change, Claimant laid the change on the counter instead of putting it in his hand, which prompted her to ask Claimant to pick it up and she refused. Chambers testified that she picked up the change, put it in the customer's hand, and apologized for the inconvenience. In addition, Chambers testified that this customer seemed irritated and, from the look on his face, did not understand why she would not pick up the money from the counter. Chambers added that Claimant said, "[S]he's not going to let customers treat her any kind of way. She wanted to be respected by cus-

tomers." (April 6, 2007 Hearing Transcript at 12.) Chambers also testified that Claimant made these remarks in a loud voice because she was upset and felt customers should respect her.

As to the December 24, 2006 incident, Chambers testified that it was brought to her attention by another manager and two other clerks that Claimant was being argumentative and made a racial comment, but that she did not actually hear the comment being made.

In her testimony, Claimant stated that Chambers did not tell the truth in her testimony regarding the December 3, 2006 incident. Claimant explained that she and McMillan were arguing at the register, while Chambers was in the office. Claimant testified that she walked to the office first to explain that she was not there to be arguing with McMillan, to which Chambers told both of them to stop arguing. Claimant testified that at the time she was speaking to a customer and McMillan thought she was talking about her, she explained to McMillan and the customer that Chambers was not even talking about her. Claimant testified that at this point in time, McMillan was upset and was the one who kept going at it.

With regard to the December 23, 2006 incident, Claimant testified that she told Chambers that the customer threw his money on the counter and that the gentlemen did not even speak English, so he did not understand that Claimant was saying to pick it up. Claimant further testified that even though she realized he did not understand what she was saying, she was going to put it back on the counter the same way that he had given it to her. Claimant added that she did not throw it on the counter, that the customer never said anything to her, and that he had a "shocked" facial expression. (April 6, 2007 Hearing Transcript at 24.) In addition,

Claimant testified that she did not know what language he spoke, but that most of the customers were Polish, Irish or Russian. Claimant also testified that Chambers was only apologizing to make it seem like Claimant was "just out for trouble." (April 6, 2007 Hearing Transcript at 24.)

Claimant then testified about the events surrounding December 24, 2006. She testified that the day before Christmas was very busy and everyone's temper was "flaring." (April 6, 2007 Hearing Transcript at 25.) Claimant further testified that she called her general manager approximately three different times to do a pickup, i.e., where the money drawer would be emptied because a certain amount of money was inside, and that when the general manager from another store arrived, Claimant told her to wait while she dealt with one more customer due to a long line down the whole store. Claimant testified that the general manager refused to wait and stated that Claimant's boss told her to get this pickup. Claimant testified that she asked the general manager could she just let her wait on this elderly customer because she had been patient. Claimant added that she told the general manager that Chambers was not her boss and that they were all employees and the Pennsylvania Liquor Control Board was their employer. Claimant further testified that her reference to the "N" word was within her statement "that's just like when they used to use the n word on us." Claimant added that she used the "N" word once, she did not speak that way normally, and when she made the statement she was referring to the fact that she did not speak that way.

The Referee found that Employer offered testimony and documentary evidence proving that it warned Claimant in 2005 that any future incident involving misconduct would result in a discharge. The

Referee further noted that Claimant admitted that she made a comment of a racial nature while on duty and in the presence of customers on December 24, 2006. Finding that Claimant failed to demonstrate good cause for her actions, the Referee concluded that Claimant's conduct constituted a disregard of the standards of behavior an employer had the right to expect of an employee and, as such, Claimant was disqualified from receiving benefits. Claimant appealed to the Board, which affirmed the Referee's decision, and this appeal followed.

## II.

■ The time and manner of Claimant's petition for review to this Court caused the Board to file a motion to quash the appeal as untimely. On August 20, 2007, this Court received Claimant's letter (dated August 8, 2007) in which a Form 3817 was enclosed reflecting a mailing date of Friday, August 17, 2007 (the 30th and last day to file a petition for review). Under Rule 1514(a) of the Pennsylvania Rules of Appellate Procedure (Pa. R.A.P.),[3] if a petition for review is filed by first-class or certified mail, it shall be deemed received by the prothonotary on the date deposited in the U.S. mail as stamped by post office personnel on a U.S. Postal Service Form 3817. A petition for review, unlike a notice of appeal, requires that reasons be given as to why the agency erred.[4] Under Section 211(a)(2) of the Commonwealth Court's Internal Operating Procedures (IOP),[5] 20 Pa.Code § 67.13(2), when a *pro*

3. Pa. R.A.P. 1514 provides, in relevant part:
   (a) Filing with the prothonotary. The petition for review, with proof of service required by Subdivision (c) of this rule, shall be filed with the prothonotary of the appellate court in person or by first class or certified mail.
   If the petition for review is filed by first class or certified mail, the petition shall be deemed received by the prothonotary for the purposes of Rule 121(a) (filing) on the date deposited in the United States mail, as stamped by post office personnel on a U.S. Postal Service Form 3817, certificate of mailing, or U.S. Postal Service Form 3800. The certificate of mailing shall show the docket number of the matter in the government unit, and shall be either enclosed with the petition or separately mailed to the prothonotary.

4. Pa. R.A.P. 1513(d) provides that:
   An appellate jurisdiction petition for review shall contain: (1) a statement of the basis for the jurisdiction of the court; (2) the names of the party or person seeking review; (3) the name of the government unit that made the order or other determination sought to be reviewed; (4) reference to the order or other determination sought to be reviewed, including the date the order or other determination was entered; (5) a general statement of the objections to the order or other determination; and (6) a short statement of the relief sought. A copy of the order or other determination to be reviewed shall be attached to the petition for review as an exhibit. The statement of objections will be deemed to include every subsidiary question fairly comprised therein. No notice to plead or verification is necessary.
   In contrast, a notice of appeal has no requirements relating to the substance of the appeal. *See* Pa. R.A.P. 904.

5. 210 Pa.Code § 67.13 provides:
   (a) Upon receipt by the chief clerk from a pro se party of a written communication which evidences an intention to appeal, the chief clerk shall timestamp the writing with the date of receipt. The chief clerk shall advise the party by letter:
   (1) As to the procedures necessary to perfect the appeal.
   (2) That the date of receipt of the pro se communication will be preserved as the date of filing of the appeal, on condition that the party files a proper petition for review within 30 days of the date of the letter from the chief clerk. If the party fails to file a proper petition for review within that period, the chief clerk shall advise the party by letter that the court will take no further action in the matter.

*se* litigant files such written correspondence appealing an agency decision, that communication tolls the statute if the litigant files a proper petition for review with objections within 30 days. In this case, Claimant sent a letter stating that she was appealing the Boards decision and giving reasons why the Boards decision was incorrect, including the Referees failure to issue requested subpoenas. Nonetheless, we sent the letter back under IOP 211(a)(2) directing Claimant to file a petition for review.

In its motion to quash, the Board contends that Claimant's appeal should be quashed because the "mailbox rule" in Pa. R.A.P. 1514(a) only applies to petitions for review, not *pro se* communications referenced in Section 211(a)(2) of the IOPs. Those communications, it contends, must be physically received by this Court within 30 days of our decision. Because the date our filing office received Claimant's letter was August 20, 2007, 33 days after the Board issued its decision, it argues that Claimant's petition for review is untimely.

If a claimant filed a bare petition for review without setting forth the objections required by Pa. R.A.P. 1513(a), there would be no dispute that the mailbox rule set forth in Pa. R.A.P. 1514(a) would apply, and the date of mailing would be deemed the date the appeal was filed. In that

case, we would have jurisdiction over the appeal, and the only question would be whether any issue was preserved for appellate review. *Hawkey v. Workmens Compensation Appeal Board*, 56 Pa. Cmwlth. 379, 425 A.2d 40 (1981). Ignoring that Claimants letter contained reasons why she felt the Boards decision was incorrect, a bare letter is the functional equivalent of a petition for review in that it evidences an intent to appeal. Just like the petition for review, the written communication preserves the filing date, and the IOP allows for supplementing that communication by submitting supplemental filings within 30 days. *Shovel Transfer Storage, Inc. v. Pennsylvania Liquor Control Board*, 547 Pa. 210, 689 A.2d 910 (1997). Because we can discern no difference between the two, a *pro se* written communication falls within Pa. R.A.P. 1514(a) in order for a claimant to make use of the U.S. Postal Service Form 3817 to ensure timely filing. We now turn to the merits of Claimants appeal.[6]

### III.

Claimant asserts that the Board's decision should be vacated because it abused its discretion and deprived her of her due process rights by upholding the Referee's denial of her application for subpoenas [7] of

(b) Upon receipt by the chief clerk of a notice of appeal in cases in which a petition for review is the proper appeal document, the chief clerk shall time-stamp the notice of appeal with the date of receipt and the court shall forthwith enter an order giving the party 30 days to file a petition for review and indicating that the failure to do so will result in the dismissal of the appeal.

6. This Court's scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed or whether findings of fact are supported by substantial evidence. *Frigm v. Unemployment Compensation Board of Re-*

*view*, 164 Pa.Cmwlth. 282, 642 A.2d 629 (1994).

7. Section 506 of the Unemployment Compensation Law, 43 P.S. § 826, provides:
"The department and the board shall have power to issue summons or subpoenas to compel the attendance of witnesses and the production of ... papers ... and other records deemed necessary as evidence in connection with a disputed claim[.]"
34 Pa.Code § 101.31 provides that "[t]he issuance of subpoenas to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda and other records and documents, may be

assistant managers Simpson and Flemengo to show that Chambers treated her differently than other employees. The Board counters that it properly denied the request for subpoenas because:

> This Court has held that a subpoena is properly denied unless the Referee or the Board has been supplied with information that a particular witness would produce *directly contradictory evidence* and that a witness in question would not appear without the issuance of a subpoena. *Flores [v. Unemployment Compensation Board of Review*, 686 A.2d [66,] 78 (Pa.Cmwlth.1996)] 686 A.2d at [76] n. 39 quoting *Hamilton [v. Unemployment Compensation Board of Review*, 110 Pa. Cmwlth. 384, 532 A.2d 535 (1987)] 532 A.2d at 537. (Board's Brief at p. 16.) (Emphasis in original).

The Board misstates the holding of the cited cases as requiring "directly contradictory evidence" before it is required to issue a subpoena. "Directly contradictory evidence" referred to what the subpoena testimony was going to produce and is not the standard that the Board should follow when issuing subpoenas. The full holding in *Hamilton* is as follows:

> This Court has recently held that the referee or Board, in their discretion, may refuse to issue a subpoena where the subpoenas were being requested for purposes of harassment or to commence a "fishing expedition." *Zukoski v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 270, [273], 525 A.2d 1279, 1280 (1987). However, nothing in *Zukoski* relieves the Board of its obligation to issue subpoenas in cases where the issuance of the subpoena would lead to relevant and probative testimony. *See Miller v. Unemployment Compensation Board of Review*, 99 Pa.Commonwealth Ct. 137,

512 A.2d 797 (1986). This would be particularly true in the instant matter, wherein the petitioner alleges that he was terminated for expressing his opinion that he was passed over for promotion as a result of racial bias.

> In the instant matter, the Board was supplied with information that a governmental witness would produce testimony directly contradictory to that of the employer. They were also informed that this witness would not appear without a subpoena. Therefore, based upon the offer of proof, it would have been an abuse of discretion and a denial of due process to not issue the subpoena.

532 A.2d at 537. The question then is should the Board have issued the subpoenas under the standard of whether the assistant managers' testimony would have led to relevant and probative evidence.

▮ In this case, Claimant sought to call the two store assistant managers to establish that she was treated differently for the same conduct as other store employees who did the same thing, which would be relevant to a claim of disparate treatment. *Geisinger Health Plan v. Unemployment Compensation Board of Review*, 964 A.2d 970 (Pa.Cmwlth.2009).

Because the assistant store managers' testimony would have been relevant and probative to show that she was treated differently than other similarly situated employees, her subpoena request was improperly denied.

Accordingly, we vacate the Board's decision and remand to the Board to remand to the Referee to issue subpoenas for and hear the testimony of assistant store managers Simpson and Flemengo and to render a new decision.[8]

obtained on application to the Board, referee, or at any local employment office."

Judge SMITH–RIBNER did not participate in the decision in this case.

Judge FRIEDMAN concurs in the result only.

## *O R D E R*

AND NOW, this 19th day of February, 2009, we vacate the order of the Unemployment Compensation Board of Review dated July 18, 2007, and remand to the Board to issue subpoenas for and hear the testimony of assistant store managers and to render a new decision.

Jurisdiction relinquished.

8. Because we have vacated the decision based on this issue, we will not address the other issues Claimant raised.