# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carolanne Murray,                          :
                 Petitioner      :
                                     :    No. 96 C.D. 2025
       v.                         :
                                     :    Submitted:  April 13, 2026
Unemployment Compensation                  :
Board of Review,                           :
                 Respondent      :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STELLA M. TSAI, Judge


***OPINION NOT REPORTED***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                          **FILED:  June 10, 2026**


Carolanne Murray (Claimant) has petitioned this Court to review an adjudication of the Unemployment Compensation Board of Review (Board), issued December 27, 2024, which determined that Claimant was ineligible for unemployment compensation (UC) benefits under Section 802(e) of the UC Law (Law) relating to willful misconduct.[1]  Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (providing that an employee shall be ineligible for compensation when their separation from employment is due to willful misconduct connected with their work).  The Law's section numbers are distinct from "the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law."  *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1166 n.1 (Pa. 2025).  For clarity, we may refer to provisions of the UC Law "only by their Purdon's citation."  *Id*.

## I. BACKGROUND[2]

Claimant was employed as a part-time cashier at BJ's Wholesale Club (Employer) from November 8, 2019, through January 15, 2024. Employer discharged Claimant for excessive tardiness and absenteeism. Claimant applied for UC benefits, but the UC Service Center denied her benefits pursuant to Section 802(e) of the Law. Claimant timely appealed the denial.

On September 11, 2024, the Referee held a hearing at which both Claimant and Employer appeared. Nairoby Reyes, front-end manager of Employer and Claimant's direct supervisor, testified that Claimant continued to show up late for work despite receiving and acknowledging several verbal and written warnings from Employer. Ms. Reyes further testified that Claimant failed to adhere to Employer's policy for calling off work numerous times. Employer then submitted into evidence, over Claimant's objection, disciplinary forms detailing Claimant's tardiness and absences. The separation of employment notice stated that Claimant had accrued fourteen tardies between October 25, 2023, and January 15, 2024. *See* Emp.'s Separation Info., 3/14/24, at 6; Emp.'s Ex. at 1.

Employer also submitted into evidence a written attendance policy that provides progressive discipline for employees who reach various thresholds of attendance-related issues.[3] Under this policy, an absence or tardiness is considered unexcused if an employee (1) fails to follow the proper notification procedures to

---

[2] Except as stated otherwise, we adopt this background from the Board's decision and order, which is supported by substantial evidence of record. *See* Bd.'s Decision & Order, 12/27/24; *see also* Ref.'s Decision, 9/13/24.

[3] Employer's attendance policy, in relevant part, provides: (1) a verbal warning for three unexcused absences or "tardies" within 90 days; (2) a written warning for two more incidents within 90 days after the verbal warning; (3) a final warning for two additional incidents within 90 days after the written warning; and (4) termination for any final attendance incident within 90 days after the final warning. *See* Emp.'s Separation Info., 3/14/24, at 3.

report an absence or tardiness; (2) engages in an unacceptable pattern of absences or tardiness (*e.g.*, calling out every other Friday); (3) fails to provide a doctor's note verifying their fitness to return to work after being absent for five or more consecutive days of illness; and (4) leaves work before the end of a scheduled shift or reports to work after the start of a scheduled shift without prior management notification and approval. *See* Emp.'s Separation Info., 3/14/24, at 2. Moreover, Employer retains discretion in administering disciplinary action for excessive and patterned absenteeism or tardiness. *Id.*

For her part, Claimant testified that she had notified Employer on numerous occasions via text message that she was running late or that she needed to call off from work and offered recent examples. Claimant testified that she provided Employer with advance notice of her mandatory appointments with the Philadelphia Housing Authority. Additionally, Claimant testified that on January 15, 2024, she called Employer before the start of her shift notifying Employer that she would be thirty minutes late due to snowstorm-related delays.

On September 13, 2024, the Referee affirmed the denial of benefits. Claimant timely appealed to the Board, which affirmed. In particular, the Board found that Employer had presented sufficient, credible evidence that Claimant was discharged for willful misconduct due to her excessive attendance issues. Bd. Decision & Order, 12/27/24, at 1-2.

Claimant timely initiated this appeal.

## II. ISSUES

Claimant contends that Employer failed to establish willful misconduct because (1) the Board improperly admitted Claimant's disciplinary record into evidence despite it containing multiple levels of hearsay, and (2) Employer did not present any competent evidence of Claimant's unexcused tardiness. *See* Pet'r's Br. at 14-25; *see also* Pet'r's Reply Br. at 2-12.

## III. DISCUSSION[4]

Claimant contends that the Board erred in concluding that Claimant was discharged for willful misconduct where Claimant had timely objected to the admission of her disciplinary record as hearsay. Claimant notes that this record contains out-of-court assertions about her attendance that were used to prove her tardiness. However, Claimant argues, Employer failed to establish an exception to the rule against hearsay that would permit the admission of this record. *See* Pet'r's Br. at 14-16; *see also* Pet'r's Reply Br. at 2-7 (challenging the circumstantial trustworthiness of the record). In response, the Board avers that the disciplinary record was properly admitted into evidence under the business records exception. *See* Resp't's Br. at 7-15.

---

[4] On appeal, our review is limited to "determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 n.4 (Pa. Cmwlth. 2022). Because the Board is the ultimate factfinder, its findings and credibility determinations are conclusive on appeal so long as they are supported by substantial evidence of record. *Guthrie v. Unemployment Comp. Bd. of Rev.*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a finding. *Pierce-Boyce,* 289 A.3d at 136. We review an agency's "admission or exclusion of evidence in an administrative proceeding" for an abuse of discretion, which includes an error of law. *D'Alessandro v. Pa. State Police* (*D'Alessandro II*), 937 A.2d 404, 410 (Pa. 2007) (plurality).

4

"Hearsay means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Absent an exception, hearsay evidence is inadmissible. Pa.R.E. 802. "Where a hearsay document contains additional hearsay within it (often referred to as 'double hearsay'), each level of hearsay must satisfy an exception to the rule prohibiting the admission of hearsay evidence." *In re A.J.R.-H.*, 188 A.3d 1157, 1169 (Pa. 2018). "[T]he burden of production is on the proponent of the hearsay statement to convince the court of its admissibility under one of the exceptions." *Hauck v. Unemployment Comp. Bd. of Rev.*, 271 A.3d 961, 967 (Pa. Cmwlth. 2022).

Generally, "agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 505. Nevertheless, "[w]ith regard to the use of hearsay in administrative proceedings, it has long been established that hearsay evidence, properly objected to, is not competent evidence to support a finding of the Board." *Ives v. Bureau of Pro. & Occupational Affs.*, 204 A.3d 564, 574 (Pa. Cmwlth. 2019) (quoting *Walker v. Unemployment Comp. Bd. of Rev.*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976)). When a party objects to evidence based on hearsay, the evidence cannot support an agency's finding of fact unless the evidence falls within a recognized hearsay exception. *S.K. v. Pa. Dep't of Educ.*, 342 A.3d 801, 812 (Pa. Cmwlth. 2025), *reargument denied* (Aug. 28, 2025), *appeal granted*, No. 533 MAL 2025, 2026 WL 682399 (Pa. Mar. 11, 2026). If the proponent successfully establishes an exception, then the evidence is admissible and can support an agency's finding of fact without additional corroboration. *Id.*

Claimant objected to the admission of her disciplinary record as hearsay. *See* Hr'g Tr., 9/11/24, at 3, 7. The disciplinary record constitutes hearsay, for it consists of statements that were submitted to prove Claimant's tardiness and absences. Emp.'s Ex. at 1. Therefore, it is not competent evidence to support the Board's findings absent an exception. *See Hauck*, 271 A.3d at 967; *Ives*, 204 A.3d at 574. Upon review, we find that the disciplinary record was properly admitted into evidence under the business records exception.

The business records exception generally requires that a custodian or other qualified witness testify that the record was made "at or near the time" of the event recorded and that the record was kept in the regular course of business. *See Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 483 (Pa. 2019); 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6). Moreover, the exception permits the factfinder to determine whether the circumstances surrounding the record "justify its admission" or "indicate a lack of trustworthiness." *Bayview*, 206 A.3d at 483. To establish "circumstantial trustworthiness" of documents under the business records exception, the proponent needs to have an "authenticating witness [who] can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company." *In re Indyk's Estate*, 413 A.2d 371, 373 (Pa. 1979).

Here, Ms. Reyes credibly testified to the procedure and substance of the disciplinary form. She described Employer's timeclock system and explained how Employer recorded instances of an employee's tardiness. *See* Hr'g Tr., 9/11/24, at 9 ("[T]hey clock in using a machine, and that machine is stamped and put on her record, so we have proof of every day how many minutes she was late."). As the Claimant's direct supervisor, Ms. Reyes testified that she personally reviewed

Claimant's timecards before issuing verbal and written warnings to Claimant. *Id*. at 7, 29. Ms. Reyes further testified that she was involved in the decision to issue Claimant a final warning, and she presented and discussed with Claimant the termination notice. *Id*. at 6-7, 14. Claimant's argument that the disciplinary form must include a detailed description of "what, when and where the violation occurred" to satisfy the business records exception misses the point. *See* Pet'r's Reply Br. at 5. Ms. Reyes' testimony demonstrates that she "[was] familiar with the procedures used and [was] able to guarantee the accuracy of the information" in the disciplinary report. *Highland Park Ctr. v. Unemployment Comp. Bd. of Rev.*, 503 A.2d 1037, 1039 (Pa. Cmwlth. 1986). As such, the Referee did not err in overruling Claimant's hearsay objection to the disciplinary report.[5]

Claimant further contends that Employer failed to prove willful misconduct when Employer did not provide any competent evidence of Claimant's unexcused tardiness. Claimant relies on *Grand Sport Auto Body v. Unemployment Compensation Board of Review,* 55 A.3d 186 (Pa. Cmwlth. 2012), for the proposition that it is the employer's burden to provide detailed evidence of an employee's entire attendance history to establish willful misconduct based on habitual attendance violations. *See* Pet'r's Br. at 18-21; *see also* Pet'r's Reply Br. at 8-10. Claimant asserts that evidence submitted by Employer falls short of the detailed factual record required by *Grand Sport.* Pet'r's Reply Br. at 10. Claimant emphasizes that the employer in *Grand Sport* presented extensive evidence

---

[5] Claimant argues that the disciplinary records remain inadmissible because the contents of the records, namely the assertions about unspecified attendance violations, constitute double hearsay. *See* Pet'r's Br. at 16; Pet'r's Reply Br. at 5-6. We do not discern any double hearsay in this case. *Cf. B.A.S. v. Pa. Dep't of Educ.,* 345 A.3d 1249, 1259 (Pa. Cmwlth. 2025)*, reargument denied* (Sept. 29, 2025) (holding that Commission erred in admitting affidavit of probable cause because document contained numerous out-of-court statements that purported to prove the alleged criminal offenses).

itemizing the claimant's attendance lapses, including dates, times, reasons, and responses, which allowed the Court to analyze if the claimant's attendance issues collectively rose to the level of willful misconduct. Pet'r's Br. at 19. In contrast, Claimant asserts that Employer's evidence here "consist[s] of a bare assertion that [Claimant] had been late [fourteen] times with no supporting detail." *Id*. at 20; *see also* Pet'r's Reply Br. at 10-13. The Board rejects Claimant's reliance on *Grand Sport* and avers that Employer provided sufficient evidence establishing an overall pattern of tardiness and absenteeism to justify Employer's decision to discharge Claimant. *See* Resp't's Br. at 17-25.

The term "willful misconduct" is not defined by statute, but this Court has defined it as: "(1) an act of wanton and willful disregard of an employer's interests; (2) a deliberate violation of rules; (3) a disregard of the standards of behavior which an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations." *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017). This Court has long held that "whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Id*.

The burden of proving willful misconduct rests with the employer. *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). Where an employer seeks to deny benefits based on a work-rule violation, the employer must prove the existence of a work rule, the reasonableness of the rule, that the employee was aware of the rule, and the employee's violation of the rule. *Waverly Heights*, 173 A.3d at 1228. If the employer meets this burden, the burden of proof shifts to the employee to prove that she had good cause for her actions.

8

*Halloran v. Unemployment Comp. Bd. of Rev.*, 188 A.3d 592, 597 (Pa. Cmwlth. 2018).

An employer has the right to expect an employee to attend work as scheduled and to be on time. *Fritz v. Unemployment Comp. Bd. of Rev.*, 446 A.2d 330, 333 (Pa. Cmwlth. 1982). This Court has repeatedly held that excessive absenteeism and tardiness may constitute willful misconduct. *Id.* While absenteeism alone is not a sufficient basis for denial of UC benefits, an overall pattern of habitual absenteeism and tardiness can constitute willful misconduct if the claimant's violations fall below the standard of behavior that an employer expects of their employees. *Grand Sport*, 55 A.3d at 194.

In *Grand Sport*, despite evidence that the claimant was repeatedly late or absent from work, the Board granted the claimant benefits because it determined that the claimant had good cause for his absence immediately prior to discharge. *Id.* at 189. Upon the employer's appeal, this Court reversed, noting that the employer had presented evidence documenting that the claimant was tardy or absent from work on nineteen occasions over a seven-month period prior to being discharged. *Id.* at 190-91. The Court further noted that the claimant's conduct continued despite receiving two written warnings and an effort by the employer to accommodate the claimant by changing his start time. *Id.* at 192. In reversing, this Court reasoned that the "[c]laimant's pattern of habitual unexcused tardiness and absences fell below the standard of behavior [that] [e]mployer had the right to expect of [the c]laimant as its employee and were inimical to [e]mployer's interests in completing its work in a timely fashion." *Id.* at 193.

Here, similar to *Grand Sport*, Employer presented credible documentary and testimonial evidence that it had discharged Claimant based on her

history of excessive tardiness and absenteeism. *See* Bd.'s Decision & Order, 12/27/24, at 1-2. Claimant's disciplinary record established that she had received numerous verbal and written warnings from Employer regarding her habitual tardiness. *See id.* at 2; Emp.'s Separation Info., 3/14/24. The disciplinary forms in her record contain specific dates that Claimant was tardy or absent from work, how late Claimant was on those dates, and whether she complied with Employer's policy for calling out of work or reporting her tardiness. *See id.* at 9-10. For example, the disciplinary warning dated March 6, 2021, stated that Claimant "[was] late on 01/13 52 mins., 01/16 you were late 15 mins., 01/29 you were late 24 mins." *Id.* at 10.

In addition to this documentation, Ms. Reyes credibly testified that Claimant continued to show up late for work and failed to adhere to Employer's policy despite Claimant being told that her job was in jeopardy if her behavior persisted. *See* Hr'g Tr., 9/11/24, at 13. Moreover, Ms. Reyes testified that when Claimant was terminated from her employment, Claimant was told and shown the timestamps specifying the dates of her fourteen tardies that she accrued over a sixty-day period. *Id.* at 14.

Claimant's assertion that Employer must produce a detailed record of each specific allegation of an employee's tardiness and absence to establish willful misconduct again misses the point. *See* Pet'r's Br. at 21; Pet'r's Reply Br. at 8-10. The documentary and testimonial evidence submitted by Employer establishes a pattern of habitual, unexcused tardiness by Claimant. *See* Bd. Decision & Order, 12/27/24, at 1-2. Based on this substantial evidence, we discern no error in the Board's conclusion that Claimant was discharged because of her history of unexcused tardiness. *See Grand Sport*, 55 A.3d at 192-93; *Guthrie*, 738 A.2d at 521.

Additionally, we reject Claimant's argument that the Board was precluded from finding willful misconduct because Employer had violated its own progressive attendance policy. *See* Pet'r's Br. at 24-25. Under Employer's attendance policy, "[Employer] reserve[s] the right to combine or skip steps in the progressive discipline policy depending on the facts of each situation and the nature of the offense." *See* Claimant's Ex. at 5. Additionally, the policy provides that "[t]he level of disciplinary action may also vary depending on whether the offense is repeated despite prior coaching, counseling, or training." *Id*. When Claimant was discharged, she had fourteen unexcused tardies over sixty days, far exceeding what was contemplated by Employer's policy. Prior to being discharged, Claimant received numerous warnings from Employer regarding her tardiness but did not show any improvement. As such, Employer acted reasonably when it deviated from its progressive attendance policy and discharged Claimant for excessive tardiness and absenteeism. *See, e.g.*, *Frigm v. Unemployment Comp. Bd. of Review*, 642 A.2d 629, 634 (Pa. Cmwlth. 1994) (recognizing that an employer may deviate from its progressive discipline policy and proceed to termination if the policy provides for such a deviation).

Having concluded that Employer met its burden of proving willful misconduct, the burden shifted to Claimant to offer good cause to justify her tardiness. *Grand Sport*, 55 A.3d at 194. Claimant argues that she had good cause and provided proper notice for the incidents of tardiness identified by Employer. *See* Pet'r's Br. at 22-24. This argument is unpersuasive. First, Claimant testified that she would text and call Employer to provide notice that she was running late. *See* Hr'g Tr., 9/11/24, at 17. This was not proper notice under Employer's policy, as "texting the Manager-on-Duty or leaving a voicemail message are not acceptable

11

forms of communication." *See* Claimant's Ex. at 4. Second, the Referee did not find Claimant's testimony credible. Ref.'s Decision, 9/13/24, at 3. Of the fourteen tardies Claimant accrued before she was terminated, she was only able to provide explanations for three occasions. *Id*. Additionally, Ms. Reyes testified that when she discussed Claimant's tardiness with her, Claimant did not have a valid explanation. *See* Hr'g Tr., 9/11/24, at 12 ("It was a different story every day that I recall."). Moreover, a claimant's single or limited instance of compliance with an employer's policy does not excuse an overall pattern of noncompliance. *Grand Sport*, 55 A.3d at 194. Based on Employer's testimony regarding Claimant's history of excessive tardiness and absences, and Claimant's failure to offer good cause to justify those tardies, we conclude that Claimant did not meet her burden.

## IV. CONCLUSION

Claimant's disciplinary record was properly admitted into evidence because Employer established the business records exception to the rule against hearsay. Further, based on this substantial evidence, as well as the credible testimony of Employer, Employer met its burden of proving that Claimant's actions constituted willful misconduct. Moreover, Claimant could not provide good cause to justify her history of excessive tardiness and absenteeism. Thus, we affirm the Board's decision.

**LORI A. DUMAS, Judge**

12

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Carolanne Murray, :
          Petitioner :
: No. 96 C.D. 2025
          v. :
:
Unemployment Compensation :
Board of Review, :
          Respondent :

# **O R D E R**

AND NOW, this 10th day of June, 2026, the order of the Unemployment Compensation Board of Review, issued December 27, 2024, is AFFIRMED.

**LORI A. DUMAS, Judge**