**GRAND SPORT AUTO BODY, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 12, 2012.

Decided Oct. 24, 2012.

Randall C. Schauer, Exton, for petitioner.

Rebecca A. McClincy, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

Grand Sport Auto Body (Employer) petitions for review of the Order of the Unemployment Compensation Board of Review (Board) that affirmed the decision of the Unemployment Compensation Referee (Referee) finding that Andrew Terrell (Claimant) was not ineligible for unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] The Board determined that because Claimant's last absence was justified, Claimant's absenteeism did not rise to the level of willful misconduct. Because we conclude that the Board erred in focusing solely on Claimant's last absence, rather than on Claimant's long history of tardiness and absenteeism, which was the reason Employer discharged Claimant, we reverse.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) provides that "[a]n employe shall be ineligible for compensation for any week ... in which his unemployment is due to his discharge ... from work for willful misconduct connected with his work." *Id.*

Claimant worked for Employer as a vehicle detailer from January 2008 until March 11, 2011, his last day of work. On June 17, 2010, Employer warned Claimant about his excessive tardiness. Employer again warned Claimant about his excessive tardiness on December 27, 2010. Between September 14, 2010, and March 10, 2011, Claimant was tardy or absent without a valid excuse 19 times. Claimant requested time off from March 14, 2011, until March 21, 2011, to get married in Mexico, which Employer approved. On March 21, 2011, Claimant's flight from Mexico was overbooked. The airline rebooked Claimant to a flight that left on March 22, 2011, and, as a result, Claimant could not return to work on March 22, 2011, as scheduled. Claimant contacted Employer on March 21, 2011, to inform Employer that he was stuck in Mexico. When Claimant returned to work on March 23, 2011, Employer suspended him pending Employer's review of Claimant's situation. "On March 26, 2011, [E]mployer discharged [C]laimant because of his *history* of attendance and tardy arrivals." (Referee Op. Findings of Fact (FOF) ¶¶ 1–9 (emphasis added); Written Warning of June 17, 2010, R.R. at 71a; Employer's Ex. 2, R.R. at 58a, 101a–03a; Attachment to Employer Questionnaire, R.R. at 31a–32a; Written Warning of December 27, 2010, R.R. at 65a.)

Claimant applied for UC benefits, and the Erie UC Service Center (Service Center) determined that Claimant was eligible for benefits under Section 402(e) of the Law. Employer appealed, and the Referee held a hearing at which Claimant and several witnesses for Employer testified.

Employer's Shop Manager testified regarding Claimant's employment and history of tardiness and absenteeism, including Claimant's last absence on March 22, 2011. The Shop Manager indicated that, when Claimant returned on March 23rd, Employer placed him on suspension as "a culmination of prior incidences of absenteeism and tardiness." (Referee Hr'g Tr. at 5, R.R. at 85a.) He explained that Claimant's last incident of tardiness was on March 10, 2011, when Claimant was 29 minutes late without informing Employer or providing a reason for being late. The Shop Manager stated that Employer had previously warned Claimant about his attendance issues and presented those written warnings, as well as text messages from Claimant regarding his being absent or late for work. The Shop Manager testified that Employer changed Claimant's work schedule so that he started at 8:30 a.m. instead of 8:00 a.m. to help reduce Claimant's tardiness, but he continued to be tardy. The Shop Manager indicated that Claimant's absences and lateness were an issue because it hindered Employer's ability to get work done. According to Shop Manager, Employer previously discharged Claimant, but had rehired him pursuant to an agreement regarding Claimant's attendance. (Referee Hr'g Tr. at 6–7, 12–14, 17, R.R. at 86a–87a, 92a–94a, 97a.)

Employer's Regional Manager testified that he had spoken with Claimant in the past about his absences and tardiness and had been involved in giving Claimant the written warnings regarding his attendance. The Regional Manager stated that Employer did not discharge Claimant because of the March 22, 2011, absence, but because of "a series of events that had happened over a course of two years" and Employer was "trying to keep [Claimant] employed [but] he ignored the written warnings and ignored the verbal warnings." (Referee Hr'g Tr. at 7, R.R. at 87a.) The Regional Manager testified that Employer had already decided to discharge Claimant prior to Claimant's return from Mexico due to his attendance issues and that, when he discharged Claimant, he

told Claimant that it was not because of the March 22nd absence, but because of the absences and tardiness that led up to that incident. (Referee Hr'g Tr. at 7, 14–15, R.R. at 87a, 94a–95a.) Employer's Production Manager testified that he had spoken with Claimant about being late and warned Claimant that if Claimant continued to be late for work he would be discharged. The Production Manager indicated that he offered to call Claimant in the morning to make sure he was up so that Claimant would arrive at work on time. (Referee Hr'g Tr. at 8, R.R. at 88a.) Finally, Employer's Human Resources Manager was present to support all of the documents Employer entered into evidence. (Referee Hr'g Tr. at 8, R.R. at 88a.)

Claimant testified regarding his work history, and described the circumstances surrounding his last absence. Claimant explained that his flight home was overbooked and he was required to fly back a day later. Claimant also indicated that he was aware of Employer's attendance policy and how to notify Employer if he was going to be late for work. When asked about his attendance and tardiness, Claimant stated "I mean, who's not late more than twice in one month due to, you know, this or that or the other thing? . . . Not that it should be allowed, but I mean, let's be real." (Referee Hr'g Tr. at 11, R.R. at 91a.) Claimant could not recall why he was late on March 10, 2011, but was "sure it was a good excuse." (Referee Hr'g Tr. at 8–12, R.R. at 88a–92a.)

 Based on that testimony, the Referee indicated that Employer discharged Claimant due to his record of attendance, which included tardy arrivals and absences that Employer believed were excessive. However, the Referee held that "[e]xcessive absenteeism and tardiness, where justified or where properly reported, while a legitimate basis for discharge, do not constitute willful misconduct." (Referee Op. at 2.) Concluding that Claimant's most recent absence was justified due to his being rebooked onto a later flight, the Referee held that there was no willful misconduct and Claimant was not ineligible for UC benefits. Employer appealed to the Board. The Board found no error in the Referee's determination, adopted the findings and conclusions as its own, and affirmed. Employer now petitions this Court for review.[2]

Employer argues on appeal that the Board incorrectly based its entire determination on Claimant's absence on March 22, 2011, which was justified, rather than on Claimant's pattern of excessive, unexcused absenteeism and tardiness, none of which Claimant attempted to justify. Employer maintains that Claimant's willful misconduct is evident in his numerous absences and tardiness over a seven-month period despite Claimant signing an employment agreement and receiving numerous verbal and written warnings. Moreover, Employer argues that Claimant failed to establish that his discharge was solely the result of the last absence, particularly where Employer's witnesses indicated that Employer had made the decision to discharge Claimant before Claimant left for Mexico.

 Section 402(e) of the Law provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspen-

**2.** "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." *Western & Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 334 n. 2 (Pa.Cmwlth.2006).

sion from work for willful misconduct connected with his work." 43 P.S. § 802(e). While the Law does not define "willful misconduct," our courts have defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Philadelphia Parking Authority v. Unemployment Compensation Board of Review,* 1 A.3d 965, 968 (Pa.Cmwlth.2010). The employer bears the burden of proving that the claimant's actions rose to the level of willful misconduct. *Docherty v. Unemployment Compensation Board of Review,* 898 A.2d 1205, 1208 (Pa.Cmwlth.2006). If the employer satisfies its burden, the burden shifts to the employee to show that he or she had good cause for his or her conduct. *McKeesport Hospital v. Unemployment Compensation Board of Review,* 155 Pa.Cmwlth. 267, 625 A.2d 112, 114 (1993). "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." *Docherty,* 898 A.2d at 1208–09. Whether an employee's actions constitute willful misconduct is a question of law subject to *de novo* review and must be determined based on a consideration of all of the circumstances. *Id.* at 1208.

Excessive absenteeism or tardiness may constitute willful misconduct. Employers have "the right to expect that ... employees will attend work when they are scheduled, that they will be on time, and that they will not leave work early without permission." *Fritz v. Unemployment Compensation Board of Review,* 66 Pa. Cmwlth. 492, 446 A.2d 330, 333 (1982). "We have repeatedly held that habitual tardiness is adequate ground[s] for a finding of willful misconduct.... [S]uch behavior is inimical to an employer's interest." *Id.* See also *Dotson v. Unemployment Compensation Board of Review,* 57 Pa. Cmwlth. 248, 425 A.2d 1219, 1220 (1981) (benefits denied where court rejected claim that the reason claimant was late 27 times and absent seven times during two-year period was due to illness); *Bowers v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 171, 392 A.2d 890, 892 (1978) (benefits denied where claimant he violated no-fault tardiness clause in collective bargaining agreement by being late 12 times during four-month period); *Unemployment Compensation Board of Review v. Glenn,* 23 Pa.Cmwlth. 240, 350 A.2d 890, 892 (1976) (benefits denied where court rejected claimant's contention that his chronic lateness was due to illness).

The evidence presented by Employer established the following history related to Claimant's work attendance.

| Date | Event |
| --- | --- |
| Dec. 28, 2007 | Claimant's employment terminated for excessive tardiness and absences. (Employer's Ex. 3, R.R. at 34a.) |
| Jan. 25, 2008 | Employer rehires Claimant on the condition that Claimant would be on time for work; Claimant signs Employment Agreement. (Employer's Ex. R7, R.R. at 55a.) |
| June 17, 2010 | Claimant receives written and verbal warning for excessive tardiness. (Written Warning of June 17, 2010, R.R. at 71a.) |
| Sept. 14, 2010 | Sixteen minutes before Claimant's shift begins, he texts Employer that he is taking his dog to the vet. Claimant states that he will be an hour late. (Employer's Ex. 2, R.R. at 101 a.) |

| | |
|---|---|
| Sept. 17, 2010 | Thirteen minutes before Claimant's shift begins, he texts Employer that he will be late because he is taking the dog to the vet. (Employer's Ex. 2, R.R. at 101 a.) |
| Sept. 27, 2010 | One hour and 31 minutes after Claimant's shift starts, he texts Employer that he is late and will be in soon. (Employer's Ex. 2, R.R. at 58a.) |
| Sept. 28, 2010 | Six minutes before his shift starts, Claimant texts Employer that he got sick and will be in soon. (Employer's Ex. 2, R.R. at 58a.) |
| Sept. 30, 2010 | Twenty minutes after his shift starts, Claimant texts Employer that his "alarm got messed up." (Employer's Ex. 2, R.R. at 102a.) |
| Oct. 4, 2010 | Twenty-four minutes before his shift starts, Claimant texts Employer that he has an appointment (of an unspecified nature) and that he will be in after that. Later that day, this time two hours and eight minutes after his shift starts, Claimant texts employer that he has another appointment. (Employer's Ex. 2, R.R. at 102a.) |
| Oct. 5, 2010 | Thirty-seven minutes after his shift starts, Claimant texts Employer that his power is out and asks if he should come to work. (Employer's Ex. 2, R.R. at 102a.) |
| Oct. 12, 2010 | Fifteen minutes before his shift starts, Claimant texts employer that he will be in around 9:00 a.m. (30 minutes late) without giving an excuse. (Employer's Ex. 2, R.R. at 103a.) |
| Oct. 13, 2010 | Six minutes after his shift starts, Claimant texts Employer that he is at the doctor's office. (Employer's Ex. 2, R.R. at 103a.) |
| Oct. 19, 2010 | Fifty minutes after his shift starts, Claimant texts Employer that he lost power from a storm. (Employer's Ex. 2, R.R. at 103a.) |
| Dec. 13, 2010 | Two minutes before his shift starts, Claimant texts Employer that he is at a doctor's appointment. (Employer's Ex. 2, R.R. at 103a.) |
| Dec. 27, 2010 | Claimant receives written and verbal warning for excessive tardiness. (Written Warning of December 27, 2010, R.R. at 65a.) |
| Feb. 7, 2011 | Claimant one hour and 24 minutes late without a valid excuse. (Attachment to Employer Questionnaire, R.R. at 31 a–32a.) |
| Feb. 15, 2011 | Claimant absent from work without a valid excuse. (Attachment to Employer Questionnaire, R.R. at 31 a–32a.) |
| Feb. 16, 2011 | Claimant one hour and 17 minutes late without a valid excuse. (Attachment to Employer Questionnaire, R.R. at 31 a–32a.) |
| Feb. 21, 2011 | Claimant absent from work without a valid excuse. (Attachment to Employer Questionnaire, R.R. at 31 a–32a.) |
| Feb. 22, 2011 | Claimant one hour and 54 minutes late without a valid excuse. (Attachment to Employer Questionnaire, R.R. at 31 a–32a.) |
| March 1, 2011 | Claimant one hour and 41 minutes late without a valid excuse. (Attachment to Employer Questionnaire, R.R. at 31 a–32a.) |
| March 7, 2011 | Claimant absent from work without a valid excuse. (Attachment to Employer Questionnaire, R.R. at 31 a–32a.) |
| March 10, 2011 | Claimant 29 minutes late without a valid excuse. (Attachment to Employer Questionnaire, R.R. at 31 a–32a.) |
| March 14–21, 2011 | Claimant scheduled to be on vacation for his wedding in Mexico. (FOF ¶¶ 2, 5.) |

March 22, 2011 — Claimant missed work because his return flight from Mexico was overbooked. (FOF ¶ 6.)

April 4, 2011 — Claimant's employment terminated due to excessive unexcused tardiness and absenteeism. (FOF ¶ 9.)

■ This history evidences an excessive number of absences and tardy starts in the seven months before Claimant went on his approved trip to Mexico. The question of whether a claimant's actions rise to the level of willful misconduct is one of law, which this Court reviews *de novo*. *Docherty*, 898 A.2d at 1208. We are bound by the Board's credibility determinations, *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth.1999), and, here, the Board did not find that Employer discharged Claimant for his March 22, 2011 absence, which was excused. Rather, it found that Claimant was discharged based on his *history* of absenteeism and tardiness. Thus, although the Board credited Claimant's testimony regarding his last absence, the Board also found Employer's witnesses credible about Claimant's earlier unexcused tardiness and absences, which Claimant did not dispute or attempt to explain at the hearing. The Board further credited Employer's testimony that this was the reason Employer discharged Claimant.

As mentioned above, an employer has the right to expect an employee to attend work when scheduled and to be on time. *Fritz*, 446 A.2d at 333. Over the seven months prior to his discharge, Claimant was tardy or absent on 19 occasions. Indeed, Claimant was tardy without an explanation two days before he left for his wedding. Claimant continued to be tardy and absent in spite of Employer's two written warnings regarding Claimant's ongoing attendance issues and Employer's attempts to assist Claimant in avoiding more instances of tardiness by changing his start time and offering to telephone Claimant in the morning to make sure he was awake. The Shop Manager testified that Claimant's inability to arrive at work on time hindered Employer's ability to complete its work. Based on this evidence, Employer demonstrated that Claimant had a pattern of habitual, unexcused tardiness and absences. Moreover, 19 instances of unexcused absences and tardiness in a seven month period is excessive.

The Board relies on *Runkle v. Unemployment Compensation Board of Review*, 104 Pa.Cmwlth. 275, 521 A.2d 530 (1987), to support its position that "even where an employer proves a pattern of excessive absenteeism as the cause for the claimant's discharge, the claimant nevertheless will be eligible for benefits if the final absence was justified." (Board Br. at 6–7.) According to the Board, it found Claimant's testimony regarding his last absence credible, a determination not reviewable by this Court, and concluded that, because Claimant's last absence was due to problems with transportation beyond Claimant's control, his absence was justified and Claimant did not commit willful misconduct.

In *Runkle*, the claimant had been warned and suspended for five days for absenteeism issues and was ultimately discharged following a week of being absent. The claimant indicated that she had been absent during that time period due to medical issues, which were documented in the claimant's medical evidence. "The referee based his conclusion of willful misconduct *primarily* on [claimant's] last period of absenteeism." *Runkle*, 521 A.2d at 531 (emphasis added). However, we pointed out that some of the claimant's other absences were explained by doctors' notes,

her having surgery, and problems with transportation. This Court noted that "[a]bsenteeism alone, while grounds for discharge, is not a sufficient basis for denial of unemployment benefits," but that "[a]n additional element, such as lack of good cause for the absence, is necessary" to deny UC benefits. *Id.* We held that an illness is good cause for an absence, and reversed the finding of willful misconduct. *Id.* This Court indicated that it did "not find that there is substantial evidence to support a finding that petitioner was not ill." *Id.* Thus, we concluded that the employer did not meet its burden of proving that the claimant's history of absences rose to the level of willful misconduct.

This matter is distinguishable from *Runkle.* Unlike the claimant's attendance history in *Runkle,* only three of Claimant's 19 absences appear to be related to his not feeling well or having a doctor's appointment. However, Claimant did not present any medical documentation to support those absences, as the claimant in *Runkle* did. It is apparent in *Runkle* that, in reversing the finding of willful misconduct, this Court looked not only at the last absences, which were justified, but at the claimant's other absences, many of which were also justified. The same cannot be said here, where Claimant offered no justification for his prior absences and late

starts during the hearing.[3] Accordingly, *Runkle* does not direct our analysis in this case.

Moreover, this Court has rejected a similar argument, "as not meritorious," from a claimant who asserted that, because his last absence was "justified by his illness," he should be granted benefits. *Dotson,* 425 A.2d at 1220. In doing so we noted that, "[t]he record is clear that claimant's history and pattern of absences and lateness precipitated his discharge, not any one incident" and that the claimant's argument was "belied by [his] own testimony that he could not particularize which latenesses were due to illness, while admitting that oversleeping and personal problems were among the causes of his unpredictable attendance." *Id.* In *Dotson,* notwithstanding the Board's finding that Claimant's last absence was justified, we stated that it was clear from the record "that [C]laimant's history and pattern of absences precipitated his discharge, not any one incident." *Id.* We thus found that claimant ineligible for benefits.

As in *Dotson,* and reviewing this matter as a question of law, we conclude that Claimant's pattern of habitual unexcused tardiness and absences, including 19 instances of unexcused absences and tardiness in a seven month period, fell below

---

**3.** The Board also relies on *Adept Corporation v. Unemployment Compensation Board of Review,* 62 Pa.Cmwlth. 566, 437 A.2d 109 (1981), for the proposition that where, as here, a claimant's absence is due to transportation problems beyond the claimant's control and reports those problems to the employer, the claimant has not committed willful misconduct. However, what this Court held in *Adept Corporation* was that "[e]ven excessive absenteeism, *where justified* or where properly reported according to company policy ... does not disqualify a claimant from receiving unemployment compensation benefits." *Id.* at 110 (emphasis added). We then reviewed the claimant's history of absences and con-

cluded that he "always properly reported his absences," "received permission, on several occasions, to be absent from work for various personal reasons," was absent "due to illness for which he frequently sought medical attention," or because of transportation difficulties that were beyond the claimant's control. *Id.* at 110–11. Like *Runkle, Adept Corporation* is readily distinguishable based on the lack of justification Claimant offered for his absences and tardiness. Other than the last absence, Claimant's justification was, essentially, everyone is late a couple of times a month for one reason or another. This is not the type of good cause justification contemplated in *Adept Corporation.*

the standard of behavior Employer had the right to expect of Claimant as its employee and were inimical to Employer's interests in completing its work in a timely fashion. Therefore, Employer satisfied its burden of showing that Claimant's actions did rise to the level of willful misconduct which, absent his showing good cause, renders Claimant ineligible for UC benefits under Section 402(e) of the Law.

Having concluded that Employer met its burden of proving willful misconduct, the burden shifted to Claimant to offer good cause to justify his numerous absences. *McKeesport*, 625 A.2d at 114. When asked to explain his ongoing tardiness and attendance issues, Claimant demonstrated a decidedly cavalier attitude toward Employer's reasonable expectation that he appear at work on time: "I mean, who's not late more than twice in one month due to, you know, this or that or the other thing. . . . Not that it should be allowed, but I mean, let's be real." (Referee Hr'g Tr. at 11, R.R. at 91a.) When given opportunities to respond to Employer's evidence that he was excessively late and absent, Claimant first passed on the opportunity, (Referee Hr'g Tr. at 7, R.R. at 87a), and then, when asked if he recalled why he was 29 minutes late on March 10, his next to last day of work, Claimant stated, "At that particular day, no, but I'm sure it was a good excuse," (Referee Hr'g Tr. at 12, R.R. at 92a). Based on Claimant's testimony regarding his *history* of absences, tardiness, and his failure to offer good cause to justify those absences, we conclude that Claimant did not meet his burden in this matter.

Accordingly, the Board's Order is reversed.

## ORDER

**NOW,** October 24, 2012, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby **REVERSED.**

DISSENTING OPINION BY President Judge PELLEGRINI.

Because the Board found good cause for Claimant's last absence, and Claimant would not have been terminated but for that final absence, I respectfully dissent from the majority and would affirm the Board.

Claimant would never receive an award for being a punctual employee. In fact, Claimant had been terminated on December 28, 2007, as a result of absenteeism and tardiness, but Employer rehired him on January 25, 2008, on the condition that he sign an Employment Agreement acknowledging his attendance problems. Claimant requested time off from March 14, 2011, through March 21, 2011, because he was getting married in Mexico, and Employer approved the request. Prior to Claimant's request for time off, Employer had warned Claimant about his tardy arrivals and excessive absences from work. On March 21, 2011, Claimant's return flight from Mexico was overbooked and he was changed to another flight that departed on March 22, 2011. On the same day, Claimant informed Employer that he could not return to work on March 22, 2011. On March 23, 2011, Claimant reported to work and was suspended at that time pending Employer's review of the situation. Claimant was ultimately terminated on March 26, 2011.

Claimant sought unemployment benefits which were granted. The Board awarded benefits because Claimant presented a justifiable reason for not returning to work on the date scheduled. The majority reverses, even though the last absence was justified, because Claimant's overall excessive absenteeism constitutes willful misconduct. While there is no doubt that

Claimant was chronically late, I dissent because the precipitating event that caused his termination was that he did not report to work on the day scheduled after his honeymoon.

There is no doubt that habitual tardiness is adequate ground for a finding of willful misconduct. "Such behavior is inimical to an employer's interest." *Fritz v. Unemployment Compensation Board of Review,* 66 Pa.Cmwlth. 492, 446 A.2d 330, 333 (1982) (citations omitted). *See also Bowers v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 171, 392 A.2d 890 (1978) (claimant's tardiness on 12 occasions within period of four months was sufficient for finding of willful misconduct); *Dotson v. Unemployment Compensation Board of Review,* 57 Pa.Cmwlth. 248, 425 A.2d 1219, 1220 (1981) (benefits denied where court rejected claimant's contention that he was late 27 times and absent seven times during two-year period due to illness); *Unemployment Compensation Board of Review v. Glenn,* 23 Pa.Cmwlth. 240, 350 A.2d 890, 892 (1976) (benefits denied where court rejected claimant's contention that his chronic lateness was due to illness).

In each of those cases, the employer at some point decided that an employee had crossed the line from being absent or late to chronically being absent or late. However, none of those cases involve, as here, an employee who proved his final absence was justified. In other words, the employees in those cases were unable to demonstrate that they did not cross the line from being absent or late to being chronically absent or late because their final absences were not justified. Even where you have a hard and fast rule as to what constitutes excessive absenteeism, the final absence is what determines whether an employee crosses the line from "regular" to "excessive" absenteeism.

Where an employee is discharged as a result of a final absence, even where an employer proves a pattern of excessive absenteeism as the reason for the employee's discharge, the employee will nevertheless be eligible for benefits if he or she can show good cause for the final absence. The reason behind that holding is that without the final absence, the employee would not have otherwise been terminated.

For example, in *Runkle v. Unemployment Compensation Board of Review,* 104 Pa.Cmwlth. 275, 521 A.2d 530, 531 (1987), although the claimant had previously been warned and suspended for excessive absenteeism, the referee specifically based his finding of willful misconduct on claimant's last one-week period of absenteeism. Concluding that there was not substantial evidence to support a finding that claimant was not ill on those particular days, we reversed the Board and granted benefits. Similarly, in *Adept Corporation v. Unemployment Compensation Board of Review,* 62 Pa.Cmwlth. 566, 437 A.2d 109 (1981), the claimant had a history of absenteeism and was eventually placed on probation, but was ultimately discharged for one particular absence resulting from automobile problems. We held that "[i]f a claimant is absent because of transportation problems beyond his control and properly reports his necessary absence, he may not be found to have engaged in willful misconduct and unemployment benefits may not be denied on that ground." *Id.* at 111.

The majority attempts to distinguish *Runkle* and *Adept Corporation* from the instant matter on the basis that the claimants in those cases provided justification for not only their final absence but also many of their earlier absences, while here, Claimant appears to have demonstrated good cause for only three of his prior 19 absences. However, regardless of how many of their previous absences were jus-

tified or not, the fact remains that none of the claimants would have been terminated but for the final absence or period of absences. Whether there was good cause for the final absence, then, is the only relevant inquiry.[1]

In this case, the Board, based on substantial evidence, made a credibility determination that Claimant's final absence was justified and properly reported,[2] and, therefore, Claimant cannot be denied benefits regardless of his prior record of absenteeism and tardiness.

Judge BROBSON joins in this dissenting opinion.

1. The majority also cites to *Dotson* in support of its holding. In that case, this Court held that a claimant's "protestations that he was discharged for an absence justified by his illness are not meritorious." 425 A.2d at 1220. That holding was partially based on the claimant's "failure to particularize which latenesses were due to illness." *Id.* Thus, *Dotson* is distinguishable because the claimant in that case failed to provide justification for his final absence, as Claimant did here.

2. The Board is the ultimate fact-finding body in unemployment matters and is empowered to resolve conflicts in evidence, to determine what weight is to be accorded the evidence, and to determine the credibility of witnesses. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth.1999).