IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albright Precision, Inc., : 
                       Petitioner : 
                         : 
          v. : No. 1830 C.D. 2016
                         : Submitted: March 24, 2017
Unemployment Compensation Board : 
of Review, : 
                 Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI               FILED: April 19, 2017

Albright Precision, Inc. (Employer) petitions from the order of the Unemployment Compensation Board of Review (Board) reversing the Unemployment Compensation Referee's (Referee) decision finding Nicholas H. Baloga (Claimant) ineligible for unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because his discharge was due to willful misconduct. We affirm the decision of the Board.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–918.10. Section 402(e) provides, in pertinent part:

An employe shall be ineligible for compensation for any week—

* * *

**(Footnote continued on next page…)**

Claimant worked part-time as a laborer for Employer from November 2015 through July 14, 2016, when he was discharged after leaving work early. Claimant filed for benefits with the Indiana UC Service Center (Service Center) stating that he was discharged due to absenteeism. In the UC Questionnaire and in a follow-up telephone call placed by the Service Center, Employer stated that it discharged Claimant for willful misconduct[2] because Claimant left work without permission one-and-a-half hours before his shift was scheduled to end on July 14, 2016. Employer stated that Claimant had a history of tardiness and had received

---

**(continued…)**

> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act. . . .

43 P.S. § 802(e).

[2] Although the Law does not define the term "willful misconduct," the courts have defined it as:

> (1) wanton or willful disregard for an employer's interests; (2) deliberate violation of an employer's rules; (3) a disregard for the standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). Where a claimant is discharged for a work rule violation, the employer has the burden to show that the claimant was aware that the work rule existed and that the claimant violated the rule. *Id.* The employer must also establish that the claimant's actions were intentional and deliberate, and the employee's actions must be considered in light of all the circumstances, including the reasons for his or her non-compliance with the employer's directives. *Id.*

both a written and oral warning. The Service Center denied benefits because Claimant had not shown good cause for his last absence. Claimant appealed, contending that he had permission from Ernie, the supervisor in-training, to leave work early on July 14, 2016.

Before the Referee, Employer's President, Clark LaBelle (LaBelle), testified that he spoke to Claimant about his tardiness on May 2, 2016, and Claimant was then issued a written notice for punching in late on June 23, 2016.[3] He went on to testify that Claimant was discharged for leaving work early without permission on July 14, 2016, when Claimant left work one-and-a-half hours before his scheduled shift ended. LaBelle testified that he saw Claimant several times during the day, and at no point did Claimant tell him that he needed to leave work early. He stated that Claimant also failed to notify either of the two supervisors who were working that day, John Sabitis or Matt Convin, that he had to leave early. However, LaBelle admitted that Ernie, the individual Claimant spoke to about leaving early, was training to be the floor supervisor. When LaBelle discovered that Claimant had left the premises, he stated that he sent a text message asking Claimant why he left. Claimant responded that he notified Ernie, a supervisor in-training, that he needed to leave early. LaBelle admitted to agreeing to work around Claimant's schedule as far as certain days he needed to be off work, but denied allowing Claimant to show up for and leave work when he pleased.

---

[3] Claimant's time sheets and his written warning for tardiness were entered into evidence. The written warning indicates that, pursuant to the employee handbook, any further violation would result in immediate termination.

Claimant testified that he was hired as a part-time employee with the understanding that LaBelle did not care what time he came into work or what time he left for the day, that it was a flexible schedule. As to what led up to his discharge, Claimant testified that he was on bereavement leave from July 11, 2016, to July 13, 2016, to attend his great grandmother's funeral. He stated that the next day, July 14, 2016, he reported to work approximately one hour early and spoke to Ernie, who he believed was a supervisor because Ernie gave the employees their assignments and supplies. Claimant told Ernie he needed to leave early and Ernie responded that this should not be a problem. When LaBelle sent him a text message asking why he left early, Claimant responded that he just returned from his great grandmother's funeral and had to drop off his rental car and pick up his dogs. LaBelle then sent Claimant a text message stating he was fired.

Crediting LaBelle's testimony, the Referee found that on the date in question, Claimant left work early without permission, and he had previously received both a verbal and written warning regarding his attendance. Because Employer met its burden in establishing that Claimant's discharge from employment was for reasons which rise to the level of willful misconduct, Claimant was ineligible for benefits under section 402(e) of the Law.

Claimant appealed to the Board, which made its own findings and reversed.[4] The Board resolved the conflicts in testimony in favor of Claimant and

[4] The Board is the ultimate fact-finder, with the power to substitute its judgment for that of a referee on both disputed facts and credibility determinations. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385-88 (Pa. 1985).

4

found his testimony to be credible. Specifically, the Board found Claimant had permission to be absent from work for bereavement leave between July 11, 2016, and July 13, 2016; that he explained to his supervisor he needed to leave work early on July 14, 2016, to return his rental car, pick up his dogs and go to his doctor's appointment; and that his supervisor gave him permission to leave early from work. The Board noted that Ernie, the supervisor who gave Claimant permission to leave early, did not testify for Employer. Because Claimant was discharged for leaving work early when, in fact, he did have permission, Employer failed to meet its burden of establishing that the discharge was for willful misconduct and the Board granted benefits.[5] Employer then filed this petition for review.[6]

On appeal, Employer contends that there is not substantial evidence to support the Board's decision because there is nothing in the record to support the Board's findings that Ernie was a supervisor and that Claimant received permission to leave work early on the day in question. However, there is substantial evidence to support that conclusion.

---

[5] Employer filed a request for reconsideration which the Board denied on November 4, 2016.

[6] Our scope of review of the Board's decision is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Rock v. Unemployment Compensation Board of Review*, 6 A.3d 646, 648 n.5 (Pa. Cmwlth. 2010). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

Claimant, who the Board found credible, testified as follows:

> Ernie at that time whether [LaBelle] wants to admit it or not was training to run the floor. He was doing certain jobs. He trained certain jobs, mostly on the paint line. We were following Ernie's orders. Ernie had the list of what to do. Ernie had what we were going to paint all the time. Ernie had what paint we were going to use. Ernie would make – Ernie would tell us where we're going to go also. . . . So that day I spoke to Ernie he said shouldn't be a problem, I'll go over there and paint. I didn't speak to anybody else because I thought that was good enough. I thought he was a supervisor. I didn't – I thought – when they had meetings, monthly meetings, Ernie would go to these monthly meetings. They had monthly meetings in a quarter so for [LaBelle] to say that Ernie was not in a supervisor position is simply not true because he was, because the last monthly meeting they had in the boardroom, Ernie attended. . . . Ernie never told me there was a problem. Never gave me one instance that there'd be a problem leaving that day.

(Reproduced Record (R.R.) at 50a.)

Moreover, Employer's own witness admitted that at the time Claimant was discharged, Ernie was training to be the floor supervisor.

"[A] violation of an employer's rule or demand is not willful misconduct 'if the evidence shows that the employe's action was justifiable and reasonable in light of all circumstances and was taken with good cause.'" *Fritz v. Unemployment Compensation Board of Review*, 446 A.2d 330, 332 (Pa. Cmwlth. 1982) (quoting *Kindrew v. Unemployment Compensation Board of Review*, 388 A.2d 801, 802 (Pa. Cmwlth. 1978)). Given the testimony adduced at the hearing,

6

the Board had substantial evidence to find that Ernie had the authority to allow Claimant to leave work early and/or Claimant's belief that Ernie had such authority was reasonable and, therefore, he was not discharged for willful misconduct.[7, 8]

Accordingly, the order of the Board is affirmed.

_____
DAN PELLEGRINI, Senior Judge

---

[7] Because Employer failed to meet its burden of proving willful misconduct, the burden never shifted to Claimant to offer good cause to justify his leaving early and we will not address Employer's argument on this issue.

[8] Whether a claimant's behavior rises to the level of willful misconduct is a question of law subject to review by this Court. *Fritz*, 446 A.2d at 332. While not raised by Employer on appeal, we note that our decision in *Grand Sport Auto Body v. Unemployment Compensation Board of Review*, 55 A.3d 186 (Pa. Cmwlth. 2012), is inapplicable. In that case, the claimant had a history of tardiness and even after being warned twice, was tardy or absent without a valid excuse 19 times. The claimant then requested a week off to get married in Mexico, which the employer approved. The claimant's return flight was overbooked and he missed an extra day of work because he was stranded in Mexico. When the claimant returned to work, his employer suspended and then discharged him because of his history of attendance issues and tardiness. The employer's witness testified that claimant was not discharged because of the final absence but because of a series of events over the course of two years, and that employer had already decided to discharge claimant prior to his final absence. The Board indicated that employer discharged claimant due to his record of attendance, but then held that there was no willful misconduct because claimant's most recent absence was justified. On appeal, this Court reversed the finding that claimant was not ineligible for benefits, holding "that the Board erred in focusing solely on [c]laimant's last absence, rather than on [c]laimant's long history of tardiness and absenteeism, which was the reason [e]mployer discharged [c]laimant. . . ." *Id.* at 187. The present matter is distinguishable as the Board did not find Claimant had engaged in a pattern of misconduct or was discharged due to a history of absenteeism or tardiness. Rather, the Board specifically found that Claimant was discharged for leaving work early without permission on July 14, 2016. Because Claimant's attendance history was not the reason for his discharge, *Grand Sport Auto* is not controlling.

7

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albright Precision, Inc., : 
                    Petitioner : 
                             : 
          v. : No. 1830 C.D. 2016
                             : 
Unemployment Compensation Board : 
of Review, : 
                    Respondent : 

# **O R D E R**

AND NOW, this 19th day of April, 2017, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

                                                      _____

                                               DAN PELLEGRINI, Senior Judge