IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles S. Nemeth,                          :
                        Petitioner          :
                                            :
            v.                              :
                                            :
Unemployment Compensation                   :
Board of Review,                            :    No. 1473 C.D. 2019
                        Respondent          :    Argued: June 8, 2020


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED: July 7, 2020


            Charles S. Nemeth (Claimant) petitions for review of the October 4,
2019 order of the Unemployment Compensation Board of Review, which affirmed
a referee's decision finding that Claimant had voluntarily quit without cause of a
necessitous and compelling nature and was, therefore, ineligible for unemployment
compensation benefits (benefits) under Section 402(b) of the Unemployment
Compensation Law (Law).[1]  Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(b).  Section 402(b) provides that an employee shall be ineligible for compensation for any
week in which his/her unemployment is due to voluntarily leaving work without cause of a
necessitous and compelling nature.

The underlying facts of this case are not in dispute. On December 15, 2014, Claimant, the owner of King Kone and the Jungle Kafe (King Kone), entered into a purchase agreement to sell the business to a third party (Employer) over a period of years with a payoff date of August 1, 2020. Finding of Fact (F.F.) 2; Certified Record (C.R.) at 99.[2] The purchase agreement provided that Claimant was permitted to maintain a position as manager of King Kone, to be paid in accordance with the agreement starting on January 1, 2015, up to and three years beyond the payoff date of August 1, 2020. F.F. 3; C.R. at 99. Claimant remained employed full-time as King Kone's manager from January 1, 2015, through June 28, 2019, his last day worked. F.F. 1; C.R. at 99.

On December 31, 2018, Claimant agreed to an amendment, initiated by Employer, whereby Claimant waived "his option to extend his employment for three years after the full payment was made for the purchase of King Kone." F.F. 4; C.R. at 100. On June 22, 2019, Claimant executed an affidavit agreeing that his employment with King Kone would end at the time that the payoff obligation was satisfied in full, thereby forgoing his option to remain employed after the purchase was complete. F.F. 5; C.R. at 100. At some point prior to Claimant's separation, Employer informed Claimant that the payoff of the purchase agreement was scheduled for June 28, 2019. F.F. 6; C.R. at 100. On June 27, 2019, Claimant notified Employer that he intended for June 28, 2019, to be his last day of employment. F.F. 7; C.R. at 100. Although the final payoff of the purchase agreement was extended until July 3, 2019, Claimant did not return to work after June 28, 2019. F.F. 8; C.R. at 100.

---

[2] The certified record does not include page numbers. The citations to the certified record contained herein will refer to the page of the certified record in PDF format as submitted to this Court.

2

On July 3, 2019, Claimant initiated a claim for benefits via the internet. C.R. at 7-11. By notice of determination mailed July 24, 2019, the Department of Labor & Industry (Department) denied benefits to Claimant, concluding that he was ineligible under Section 402(b) of the Law due to his voluntarily quitting his employment without cause of a necessitous and compelling nature. C.R. at 27-29. Claimant appealed to a referee, who scheduled and held a hearing on August 16, 2019, at which Claimant and Employer testified. *Id.* at 31-34, 41, 48-81. The referee affirmed the Department's determination. Referee's Decision & Order at 2, C.R. at 101. Claimant appealed to the Board, which affirmed the referee's decision. Board's Order at 2, C.R. at 116.

The Board adopted the findings of the referee in their entirety and added two findings: 1) that Claimant and Employer never discussed using vacation days during a telephone discussion on June 27, 2019; and 2) that Claimant voluntarily quit for personal reasons. Board's Order at 1, C.R. at 115. The Board also described Claimant as demonstrating a conscious intention to quit. *Id.* The Board further stated that it resolved all conflicts in testimony in favor of Employer and specifically credited Employer's testimony that Claimant contacted Employer on June 27, 2019, to state that the next day would be Claimant's last day at work and that Claimant had balloons, flowers, and people visiting him on June 28, 2019, to celebrate his last day with Employer. *Id.* Finally, the Board noted that any issues with respect to Claimant's contention that he had a right to continued employment under the purchase agreement were "contractual legal issues" and not relevant to the issue of whether Claimant had voluntarily quit his employment for determining whether Claimant could collect unemployment compensation. *Id.*

3

Before this Court,[3] Claimant argues as follows:

> The question posed to the court for consideration is whether a prior owner [Claimant] when transferring the business (identified as King Kone) pursuant to a fully executed Business Purchase Agreement which contains a guarantee of continued employment (IA) until the business is in fact transferred, can in any way deny benefits to [Claimant] based on some form of alleged voluntary/conscious dismissal of [e]mployment, when it is impossible to be unemployed under the Agreement until transfer of the Business pursuant to Section IA of the Business Purchase Agreement is perfected (via full payment of existing purchase from [Employer to Claimant]?

Claimant's Brief at 3. In other words, Claimant appears to argue that he cannot be deemed to have voluntarily quit his employment when his continued employment is required in accordance with the terms of the purchase agreement, and, consistent with the subsequent amendment to this agreement and affidavit, his employment could only cease after the final payoff by Employer. We disagree.

The fact that Claimant's continued employment may have been required until the final payoff was made has no bearing on the determination of whether Claimant's actions constituted a voluntary quit such that he is precluded from receiving benefits. Claimant testified that, pursuant to the terms of the original purchase agreement with Employer, he was to remain employed until August 1, 2020, with the option to continue his employment for an additional three years thereafter. Notes of Testimony (N.T.), 8/16/19, at 7; Claimant's Ex. 1, C.R. at 82-87. Claimant, however, acknowledged that he voluntarily waived this option via an

---

[3] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

4

amendment to the purchase agreement in return for Employer accelerating the date of the final payoff.[4] N.T., 8/16/19 at 10; Claimant's Ex. 4, C.R. at 91-92. Claimant also admitted to executing an affidavit on June 22, 2019, whereby he agreed that his employment with King Kone would terminate upon final payoff under the purchase agreement,[5] which was scheduled to be completed on June 28, 2019, but was extended until July 3, 2019. N.T., 8/16/19 at 8; Claimant's Ex. 3, C.R. at 90. Claimant conceded that, by signing this affidavit, he gave up his right to continued employment until August 2020. N.T., 8/16/19 at 9. Claimant also acknowledged that he had a right to reject any amendments to the original terms of the purchase agreement. *Id.* at 16.

In order to be eligible for benefits, a claimant bears the burden of proving either that his separation from employment was involuntary or that his separation was voluntary, but he had necessitous and compelling cause to leave. *Greenray Indus. v. Unemployment Comp. Bd. of Review*, 135 A.3d 1140, 1143 (Pa. Cmwlth. 2016). A voluntary termination requires a finding that the claimant had a conscious intention to leave employment. *Wise v. Unemployment Comp. Bd. of Review*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015). An express resignation is not necessary to constitute a voluntary termination; conduct which is tantamount to a voluntary termination of employment is sufficient. *Greenray Indus.*, 135 A.3d at 1143.

---

[4] This amendment was executed by Employer on December 28, 2018, and by Claimant on December 31, 2018. C.R. at 92.

[5] At oral argument, Claimant alleged that his execution of the affidavit was not voluntary and effectively constituted a termination of his employment by Employer. However, as discussed herein, Claimant had the option to refuse to sign the affidavit and continue to work until August 1, 2020, under the terms of the original purchase agreement. Claimant opted instead to sign the affidavit in exchange for Employer accelerating the date of the final payoff due and owing under this agreement.

5

Further, where a claimant is presented with a real choice between staying at work, and thus keeping his job, or leaving, and a claimant chooses to leave, our Supreme Court has held that the claimant has constructively quit his employment. *See Monaco v. Unemployment Comp. Bd. of Review*, 565 A.2d 127, 130 (Pa. 1989) (claimants voluntarily quit when they were offered a real choice between alternatives and chose to leave employment).[6] This Court has likewise held that "[c]laimants who, *while employed*, refuse to accept an offer of *continued* employment are deemed to have quit their position, and are thus subject to Section 402(b) of the [Law], which denies compensation to a claimant who 'voluntarily [leaves] work without cause of a necessitous and compelling nature.'" *Middletown Twp. v. Unemployment Comp. Bd. of Review*, 40 A.3d 217, 225 (Pa. Cmwlth. 2012) (quoting *Hosp. Serv. Ass'n of Ne. Pa. v. Unemployment Comp. Bd. of Review*, 476 A.2d 516, 518 (Pa. Cmwlth. 1984)) (emphasis in original).[7]

---

[6] In *Monaco*, the claimants chose to leave their jobs before the end of their shift to discuss a potential wage issue with their union representatives when they could have finished their shift and taken up their complaint at union headquarters at a later time. The Supreme Court affirmed the order of this Court, which in turn affirmed the Board's order denying benefits to the claimants because they voluntarily quit their jobs without cause of a necessitous and compelling nature.

[7] In *Middletown Township*, the Middletown Township Board of Supervisors voted on June 7, 2010, to not renew the contract of the claimant, the Township's Manager, which expired on July 9, 2010. However, prior to this expiration, the Board of Supervisors offered the claimant a new contract, albeit with terms more favorable to the Township, but the claimant rejected the same and applied for benefits. This Court concluded that the claimant's separation must be analyzed under Section 402(b) of the Law in light of the fact that the claimant, while still employed, refused to accept an offer of continued employment. Ultimately, however, this Court affirmed the Board's order awarding benefits to the claimant, on the ground that the claimant had necessitous and compelling reasons to quit his employment, *i.e.*, the employer's unilateral and substantial changes to the terms of his employment.

In *Hospital Service Association of Northeastern Pennsylvania*, a group of claimants who worked as claims processors during the night shift were informed by the employer that the night shift would be eliminated but that the claimants could continue working during the day shift. The claimants rejected the offer of continued employment, citing child care obligations, and applied for benefits. This Court concluded that the claimants' separation must be analyzed under Section

Consistent with the case law cited above, Claimant's voluntary choice herein to accept an earlier payoff to complete the purchase agreement and to forgo his continued employment with Employer renders him ineligible for benefits under Section 402(b) of the Law. The original terms of the purchase agreement provided Claimant with the option of continuing his employment for a period of three years after the original payoff date of August 1, 2020. Claimant's Ex. 1, C.R. at 82. While Claimant acknowledged that he had the right to reject any amendments to the original purchase agreement, he voluntarily agreed to execute an amendment and an affidavit that effectively waived his right to continued employment. *See* N.T., 8/16/19, at 8-10, 16. Stated another way, Claimant, while employed, effectively renounced a right to continued employment, thereby rendering him ineligible for benefits under Section 402(b) of the Law.

Finally, we note that the fact that the final payoff date was extended from June 28, 2019, to July 3, 2019, does not alter this outcome. Claimant admitted to calling Employer on June 27, 2019, to advise Employer that the next day would be his last and that he did not report to work after June 28, 2019. N.T., 8/16/19, at 12. The only reason proffered by Claimant for his absence after June 28, 2019, was that he had planned to go away for a few days and had informed Employer of his plans and his intent to use vacation days. *Id.* at 17, 20. The Board, however, found credible Employer's testimony that during his discussion with Claimant on June 27, 2019, Claimant failed to mention that he was going away or that he would be using vacation days. *Id.* at 27. "The Board is the ultimate fact finder and has exclusive

---

402(b) of the Law as the claimants, while employed, refused to accept an offer of continued employment. Ultimately, however, this Court affirmed the Board's orders, which affirmed the referees' decisions to award benefits to the claimants, on the grounds that the claimants had necessitous and compelling reasons to quit their employment, *i.e.*, child care obligations and the claimants' good faith efforts to find babysitters.

7

power to resolve conflicts in the evidence and to decide witness credibility and the weight to be accorded the evidence." *Wise*, 111 A.3d at 1261-62. We are bound by the Board's credibility determinations, *Grand Sport Auto Body v. Unemployment Comp. Bd. of Review*, 55 A.3d 186, 192 (Pa. Cmwlth. 2012), which support the Board's finding that Claimant simply ceased working after June 28, 2019, for personal reasons and not for cause of a necessitous and compelling nature.

Accordingly, the order of the Board is affirmed.


_____
CHRISTINE FIZZANO CANNON, Judge

Charles S. Nemeth,                          :
           Petitioner                 :
                                       :
           v.                              :
                                         :
Unemployment Compensation    :
Board of Review,                          :   No. 1473 C.D. 2019
           Respondent                :

## O R D E R

AND NOW, this 7th day of July 2020, the October 4, 2019 order of the

Unemployment Compensation Board of Review is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge