# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sean O'Leary, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 775 C.D. 2022 |
| | : | SUBMITTED: March 24, 2023 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
        HONORABLE MICHAEL H. WOJCIK, Judge
        HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  August 7, 2023**

Sean O'Leary, Claimant, petitions for review from the order of the Unemployment Compensation Board of Review, which affirmed the decision of the Referee denying benefits pursuant to Section 402(e) of the Unemployment Compensation Law, 43 P.S. § 802(e).[1]  This matter returns to us after remand to the Board for consideration of the merits of this claim on the evidence already adduced.[2]  We reverse.

The facts as found by the Board are as follows.  (Bd. Decision & Order, Findings of Fact "F.F." Nos. 1-7.)  Claimant was employed by Luzerne County Community College, Employer, as a full-time security guard and his last day of work was on December 12, 2019.  Employer had issues with Claimant's attendance and

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

[2] Op., *O'Leary v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 984 C.D. 2020, filed Oct. 27, 2021).

had provided him with a warning in October 2018. On October 22, 2019, Claimant received a verbal warning about his attendance, after which he requested to be transferred to the overnight shift, which Employer accommodated. On November 18, 2019, Employer gave Claimant a written warning about his attendance. The Board found that during October and November 2019, Claimant was tardy or absent eight to ten times. We discuss these findings, as well as what was not found by the Board, *infra*.

On December 9, 2019, Claimant was preparing to report for his shift when he experienced a fast heart rate and dizziness and collapsed on the floor. Claimant was unconscious and incapacitated on the floor for close to three hours and has no recollection of that time. Claimant's father found Claimant face down on the floor and bloodied. Claimant's father shook Claimant, waking him, and told him that his supervisor was on the phone. Claimant grabbed the phone, apologized for missing his shift, and explained that he had an "attack." (*Id.*, F.F. No. 5.) Claimant failed to report to or call off from work on December 9, 2019, due to the above-described events. On December 12, 2019, Employer suspended Claimant and, after an investigation and a *Loudermill* hearing[3] on January 3, 2020, discharged him due to a continual pattern of tardiness and absences after warning.

Claimant was initially found eligible for benefits by the Department of Labor & Industry. Employer appealed and, due to connection problems, Claimant was unable to attend the telephonic hearing before the Referee in late April 2020. The Referee and the Board found Claimant ineligible for benefits based upon the testimony of Employer alone. A second hearing was held to permit Claimant to

---

[3] A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985).

explain his failure to attend the initial hearing and to obtain evidence on the merits. The Board determined that Claimant did not have good cause for his absence from the first hearing and affirmed the Referee on that ground. This Court ultimately vacated that decision and remanded for consideration of the merits of the case, to include testimony adduced during the second hearing. On remand, the Board issued a decision and order affirming the Referee's decision to deny benefits on the merits. Relying upon our decision in *Grand Sport Auto Body v. Unemployment Compensation Board of Review*, 55 A.3d 186 (Pa. Cmwlth. 2012) (*en banc*), the Board determined that Claimant's pattern of absenteeism and tardiness fell below the standard of behavior Employer had a right to expect and was inimical to its interest in completing work in a timely fashion, thus rising to the level of willful misconduct. The Board concluded that Claimant was fired not solely for his final absence, but for a pattern of tardiness and absenteeism, and that even if Claimant had good cause for the final episode, his pattern rose to willful misconduct. Claimant's instant appeal to this Court followed.

On appeal, Claimant contends that the Board erred in concluding that there was willful misconduct under Section 402(e) of the Law. Section 402(e) provides as follows: "An employe[e] shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge . . . from work for willful misconduct connected with his work . . . ." 42 P.S. § 802(e). Claimant argues that he had good cause for his final work absence on December 9, 2019, when he had an illness that rendered him unconscious, and therefore that the evidence does not support a conclusion of willful misconduct. Employer responds that, as the Board concluded, it did not terminate Claimant solely due to his final absence, but for a continual pattern of tardiness and absences.

Absenteeism, taken alone, does not generally amount to willful misconduct. *Vargas v. Unemployment Comp. Bd. of Rev.*, 486 A.2d 1050, 1051 (Pa. Cmwlth. 1985). An additional element, such as the lack of good cause for an absence, is necessary. *Runkle v. Unemployment Comp. Bd. of Rev.*, 521 A.2d 530, 531 (Pa. Cmwlth. 1987). An absence due to illness constitutes good cause and does not constitute willful misconduct. *Id.* The burden of proving willful misconduct, so as to render a petitioner ineligible for unemployment compensation benefits, is on the employer. *Id.*

However, excessive absenteeism may, in some circumstances, constitute willful misconduct. *Grand Sport Auto Body*, 55 A.3d at 190; *Dotson v. Unemployment Comp. Bd. of Rev.*, 425 A.2d 1219 (Pa. Cmwlth. 1981). Employers have "the right to expect that . . . employees will attend work when they are scheduled, that they will be on time, and that they will not leave work early without permission." *Grand Sport Auto Body*, 55 A.3d at 190 [quoting *Fritz v. Unemployment Comp. Bd. of Rev.,* 446 A.2d 330, 333 (Pa. Cmwlth. 1982)]. In *Grand Sport Auto Body*, we reversed the Board's determination that the claimant was eligible for benefits, holding that a history of absenteeism and tardiness rose to the level of willful misconduct despite the claimant's last absence before discharge being justified. Notably, in that case, "the Board did not find that [the] [e]mployer discharged [the] [c]laimant for his [final] absence, which was excused. Rather, it found that [the] [c]laimant was discharged based on his *history* of absenteeism and tardiness." *Id.* at 192 (emphasis original). In *Grand Sport Auto Body*, this Court carefully reviewed the chronology of the claimant's pattern of tardiness and absenteeism and the several warnings tied to the various incidents. *Id.* at 190-92. The claimant in question was terminated previously by Grand Sport Auto Body at

4

the end of 2007 for excessive unexcused tardiness and absences and was then rehired in January 2008. *Id.* at 190. Then in June 2010, the claimant received an initial warning about tardiness and absenteeism, followed by a long string of documented unexcused tardiness and absenteeism, with five episodes in September 2010, five in October 2010, two in December 2010, five in February 2011, and three in March 2011. *Id.* at 190-91. This seven-month long string of unexcused tardiness and absenteeism continued despite two written warnings, the second coming in December 2010, and the employer's attempts to assist the claimant in avoiding more by changing his start time and offering to telephone him in the morning to make sure he was awake. *Id.* at 192. The final unexcused absence was twelve days before the claimant's firing. The Board found credible the employer's witnesses, one of whom testified that the decision to fire the claimant had been made prior to his final, excusable absence.

In this case, the key finding by the Board of a pattern of absenteeism was as follows:

> On October 22, 2019, . . . [C]laimant received a verbal warning for attendance, after which [he] requested to be transferred to the overnight shift, which . . . [E]mployer accommodated. During October and November, . . . [C]laimant had approximately 8-10 instances of tardiness and absenteeism. On November 18, 2019, . . . [E]mployer provided [him] with a written warning which included attendance.

(Bd. Decision & Order, F.F. No. 3.) The Board did not find, and the record does not lend any support to, the proposition that there was a pattern of unexcused tardiness and absenteeism *after* the written warning but *prior* to Claimant's last day of work

5

on December 12, 2019. Rather, the January 2, 2020 dismissal letter informing Claimant of his termination reads as follows:

> Any *further problems* involving your work performance concerning the above items or any other violation of a standard of conduct which [Employer] has the right to expect of you will result in further disciplinary action up to and including termination of employment.

[Reproduced Record "R.R." at 272a (emphasis supplied).] However, besides the December 9, 2019 episode, which was justified by illness, Employer did not present evidence of *further* problems. Similarly, the Board did not find that any of the eight to ten episodes of tardiness and absenteeism in October and November 2019 occurred *after* the November 19, 2019 warning letter—and the evidence presented, far from supporting such a finding, would contradict it. Kim Hogan, Employer's director of human resources, testified on cross-examination that the December 9, 2019 episode was the basis for Claimant's termination:

> [Q]   All right. So, at that particular point in November of 2019, [Employer] did not act to terminate or suspend [Claimant]. Is that right?
>
> [A]   Correct.
>
> [Q]   Okay. And so, the basis for his suspension and termination in January of 2020 was the December event, December 5th [sic] event, 2019. Is that correct?
>
> [A]   I'm looking if that's the date. That's correct.

(Notes of Testimony "N.T." July 21, 2020 at 14, R.R. at 449a.) Ms. Hogan confirmed that "[e]verything that [was] contained in the [termination letter] took

6

place prior to his most recent discipline in November 2019, except the December 9th incident." (*Id.*) On re-direct, Ms. Hogan answered "yes" to the following question: "[T]he basis for the discipline and termination of . . . Claimant is that all laid out in . . . the January 2nd, 2020 letter given to [Claimant]?" (*Id.*) Ms. Hogan also answered the affirmative to the following question: "[a]nd isn't it true that aside from that, everything else had been identified to [Claimant] as a disciplinary matter in November 2019 and did not lead [Employer] to suspend or terminate him at that time?" (*Id.* at 17, R.R. at 452a.) Simply put, Employer did not see the previous incidents of absenteeism as grounds for immediate termination because it stated only that *further* incident(s) would warrant such disciplinary action. Thus, it is apparent that the December 9, 2019 episode was the event that precipitated Claimant's termination.

In light of the foregoing, we reverse.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean O'Leary,                              :
                          Petitioner       :
                                           :
            v.                             :      No. 775 C.D. 2022
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                          Respondent       :

## **O R D E R**

AND NOW, this 7th day of August, 2023, the order of the Unemployment Compensation Board of Review is REVERSED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita