**Julieanna M. BALDAUF, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 14, 2004.

Decided July 26, 2004.

Kim A. Bodnar, Pittsburgh, for petitioner.

Heather E. Conlon, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

Julieanna M. Baldauf (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board), which reversed the referee's decision finding Claimant eligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

Claimant filed for unemployment compensation benefits, and the Unemployment Compensation Service Center (Center) issued a determination denying benefits. Claimant filed an appeal of this determination, and following a hearing, the referee

---

1. Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), provides in relevant part,

> An employee shall be ineligible for compensation for any week—(e) in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "unemployment" as defined in this act. 43 P.S. § 802(e).

The statute does not define "willful misconduct." However, the appellate courts have held that, in the unemployment compensation context, "willful misconduct" means:

> (a) wanton or willful disregard for an employer's interests;
> (b) deliberate violation of an employer's rules;
> (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or
> (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Compensation Board of Review*, 573 Pa. 594, 827 A.2d 422 (2003).

issued a decision finding Claimant eligible for benefits. Claimant's employer appealed that decision to the Board.

Claimant was employed as a paralegal with the law firm of Woomer & Friday, LLP (Employer) for approximately two and one-half years. Claimant, both partners, Robert Woomer (Woomer) and Peter Friday (Friday), as well as the law firm office manager, Cynthia Blakeley (Office Manager), testified at the referee hearing. Claimant had a history of differences with Friday, and she had been informed on various occasions that her work product did not meet his expectations.

During a meeting several months before Claimant was terminated from employment, Friday again spoke to Claimant about her work performance and the reasons for his dissatisfaction. In the course of this meeting, Friday invited Claimant to look for other work if she was not satisfied there, *but not to do that on company time.* (Finding of Fact No. 4, R. Item 2, 3, N.T. at 7, 11, 28, 31, 34.) Subsequent to this meeting, Claimant informed the other partner, Woomer, that she had been told by Friday to look for another job and feared for her job. Woomer assured her she was not going to be fired. From that point, Claimant was no longer given assignments to complete for Friday, but worked exclusively for Woomer. Woomer testified that he, too, believed that she was not working up to her potential. (N.T. at 25, 26.)

Concerns about Claimant's productivity and manner continued, and several days prior to Claimant's termination from employment, Woomer became especially concerned about Claimant's plans to use overtime hours accumulated during the week to underwrite a vacation day. (Finding of Fact No. 6.) At Woomer's direction, the Office Manager called Claimant to a meeting on July 16, 2003, during which Claim-

ant was again told that her job performance was not satisfactory. The Office Manager testified that Claimant became very angry and informed the Office Manager that she was looking for another job and left the meeting. (Finding of Fact No. 8.) Claimant later returned and apologized to the Office Manager. The Office Manager offered to schedule a meeting to discuss Claimant's case load, the status of her cases, and the direction in which she should be going. Claimant said she was too busy to have such a meeting. (N.T. at 5.)

Subsequent to the meeting, the Office Manager conducted an audit of Claimant's computer activity and found that Claimant had accessed a job search internet site immediately after their meeting. (Finding of Fact No. 11.) The Office Manager testified that the audit had uncovered e-mail messages sent during working hours from Claimant to another attorney requesting employment, as well as numerous e-mail contacts with employment agencies dating back through 2002, with the most activity during the last three months of Claimant's employment. (N.T. at 7, 8.) On July 17, 2003, the Office Manager and Woomer made a conference call to Claimant, who had taken a vacation day. Woomer informed Claimant on the phone that her employment was terminated for theft of company time by using her computer to look for other employment. (Finding of Fact No. 18.)

▆▆▆ Our scope of review is limited to determining whether Claimant's constitutional rights were violated, whether an error of law was committed, or whether substantial evidence supports the findings of fact. *Sheets v. Unemployment Compensation Board of Review,* 708 A.2d 884 (Pa. Cmwlth.1998). Whether a claimant's conduct constitutes willful misconduct is a question of law subject to our review.

*Kelly v. Unemployment Compensation Board of Review,* 747 A.2d 436 (Pa. Cmwlth.2000).

 Referee's Finding of Fact No. 4 states that Friday invited Claimant in early 2003 to look for other work if she was not satisfied there, but not to do that on company time. However, in its decision to reverse the determination of the Center, the referee states that Claimant "justified her actions throughout her employment including her computer activity following the meeting she had with her manager on July 17, 2003." Claimant denied having been told that she was prohibited from looking for a new job during her work hours and testified that there was nothing wrong in doing so since she had been told to look for another job. (N.T. at 39.) In reversing the referee's determination, the Board adopted the referee's findings of facts with two exceptions: (1) the Board omitted the referee's Finding of Fact No. 13, which stated that Claimant used the Monster.com site regularly, and had in fact obtained her position with the company in that manner (a review of the record indicates no evidence whatsoever as to how Claimant obtained her position); and (2) the Board added a new finding of fact stating that Claimant knew or should have known that accessing personal e-mail and non-work-related websites while being paid to work by the employer is contrary to the employer's interests. The Board further stated that it was resolving the conflicts in testimony, in relevant part, in favor of Employer and that it found the Employer's testimony to be credible. The Board is the ultimate fact finder and is empowered to make credibility determinations. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). We conclude that the Board did not err in determining the Claimant's actions constituted willful misconduct.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 26th day of July 2004, the order of the Unemployment Compensation Board of Review in the above-captioned matter is AFFIRMED.