# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amazing Grace Dental,         :
            Petitioner     :
                              :
       v.                   :    No. 1143 C.D. 2018
                              :    Submitted: August 7, 2020
Unemployment Compensation    :
Board of Review,              :
            Respondent   :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED: March 25, 2021**


Petitioner Amazing Grace Dental (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board), which determined that Atildah Conteh (Claimant) is not ineligible for unemployment benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[2] relating to discharge for willful misconduct. We now vacate and remand the matter to the Board.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant was employed full time as a receptionist for Employer from April 3, 2017, until November 28, 2017. (Certified Record (C.R.), Item Nos. 2 at 2, 15 at 5.) After separating from her position, Claimant applied for unemployment benefits on January 11, 2018, citing that she was discharged by Employer without cause. (C.R., Item No. 2 at 2-3.) The Erie UC Service Center (Service Center) granted Claimant benefits, concluding that Employer failed to prove that Claimant's actions constituted willful misconduct under Section 402(e) of the Law. (C.R., Item No. 7 at 1.) Employer appealed the Service Center's decision, and an Unemployment Compensation Referee (Referee) conducted a hearing. (C.R., Item No. 14.) Claimant and Employer's witness, Andrew Abolarin (Abolarin), the owner and/or senior manager of Employer, appeared at the hearing. (C.R., Item No. 15 at 1, 31.) Each party testified as to the circumstances surrounding Claimant's termination.

Following the hearing, the Referee issued a decision, concluding that Claimant was ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Law. (C.R., Item No. 16 at 4.) The Referee reasoned that Employer established reasonable work policies and directives regarding tardiness and personal use of the business phone, Employer conveyed those policies to Claimant, and Claimant continued to violate them after being warned of her abuse of the policies. (*Id*. at 3.) Claimant's conduct, therefore, constituted willful misconduct under Section 402(e). (*Id*.) The Referee further concluded that Claimant failed to demonstrate good cause for violating Employer's directives. (*Id*. at 3-4.)

Claimant appealed the Referee's decision to the Board. (C.R., Item No. 17.) The Board reversed the decision of the Referee and held that Claimant was not

2

ineligible for benefits. (C.R., Item No. 18.) The Board issued its own findings of fact, as follows:

1. The claimant was last employed as a full-time receptionist with Amazing Grace Dental, LLC, from April 3, 2017, until her last day worked on November 28, 2017 . . . .

2. The claimant's boyfriend made frequent calls to [the] claimant while at work.

3. On or about November 2, 2017, the employer counseled the claimant on several issues[,] including reporting to work on time and keeping personal calls to a minimum.

4. The claimant did not know when her boyfriend was calling the office because the number would appear as anonymous.

5. On November 22, 2017, the claimant's boyfriend called the office and the claimant put him on hold for 28 minutes. She did not have a conversation with him.

6. On November 28, 2017, the claimant was to report to work at 9:30 A.M., but due to traffic did not arrive until 10:03 A.M.

7. At 9:36 A.M.[,] the claimant notified the employer via text message that she would be late to work.

8. On November 29, 2017, the employer discharged the claimant for tardiness and the frequent calls from her boyfriend while at work.

(*Id*. at 1-2.) The Board reasoned:

The employer provided phone records indicating several calls from the same number. The claimant does not contest that this number was her boyfriend's phone number. However, the Board cannot impute the actions of the claimant's boyfriend as a basis for disqualifying her for benefits. The Board acknowledges that some of [the] calls on the employer's phone record continued for the duration of twenty or more minutes. However, the claimant addressed this by explaining that she would place him on hold as she did with everyone due to the high volume of calls. The Board credits this testimony. Therefore, the employer has not proven willful misconduct by the claimant.

Furthermore, although the claimant was late on her last day of work, she credibly testified that it was due to traffic and that she notified the employer. Therefore, the employer has not proven a pattern of tardiness which rises to the level of willful misconduct.

3

(*Id*. at 2.) Employer now petitions this Court for review.

On appeal to this Court,[3] Employer argues that the Board made an error of law in concluding that Claimant's conduct was not willful misconduct.

Section 402(e) of the Law provides, in part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his employment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The term "willful misconduct" is not defined by statute. The courts have defined "willful misconduct" as follows: "(1) wanton or willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interests or the employee's duties and obligations." *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 425 (Pa. 2003) (quoting *Navickas v. Unemployment Comp. Bd. of Rev.*, 787 A.2d 284, 288 (Pa. 2001)). It is a well-established principle that "[w]hether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012).

An employer bears the burden to prove that it discharged an employee for willful misconduct. *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). If willful misconduct is based upon a violation of an employer's policy or work rule, the employer must establish the rule's existence, its reasonableness, and the employee was aware of the rule when she violated it. *Brown*, 49 A.3d at 937. Once the employer makes this showing, the burden shifts

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

4

to the employee to either invalidate it or to show that the employee had good cause for her conduct. *Jordan v. Unemployment Comp. Bd. of Rev.*, 684 A.2d 1096, 1099 (Pa. Cmwlth. 1996). As it concerns an employee's attendance, employers have "the right to expect that . . . employees will attend work when they are scheduled, that they will be on time, and that they will not leave work early without permission." *Grand Sport Auto Body v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (quoting *Fritz v. Unemployment Comp. Bd. of Rev.*, 446 A.2d 330, 333 (Pa. Cmwlth. 1982)). An employee's tardiness constitutes willful misconduct when such tardiness lacks good cause, and especially where an employee was given warnings for past tardiness violations. *Pickett v. Unemployment Comp. Bd. of Rev.*, 420 A.2d 792, 793 (Pa. Cmwlth. 1980).

Employer contends that Claimant's actions constituted willful misconduct because Employer established clear policies concerning use of the business phone and tardiness, and, after having warned Claimant about her abuse of those policies, Claimant continued to violate them. As it concerns Claimant's personal use of the business phone, Employer asserts Claimant was at fault for using the business phone to speak with her boyfriend and for placing him on hold for extended periods of time. In so doing, Employer claims she disregarded Employer's need to have the phone lines open to conduct business. Employer further alleges that Claimant was habitually late both before and after being warned about her tardiness. Claimant, therefore, disregarded Employer's reasonable attendance policy. Employer does not challenge the Board's factual findings, and, consequently, those findings are binding on appeal. *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 899 (Pa. Cmwlth. 2019).

5

As to the business phone usage, the Board contends that the actions of Claimant's boyfriend in calling the business phone cannot be attributed to Claimant or give rise to willful misconduct as a violation of Employer's policies. In *Keg & Butcher Block v. Unemployment Compensation Board of Review*, 450 A.2d 782 (Pa. Cmwlth. 1982), we concluded that the actions of a claimant's wife in calling and yelling at his employer could not be attributed to the claimant to establish willful misconduct on his part. *See Keg & Butcher Block*, 450 A.2d at 784-85. Likewise, the phone record at issue here shows that all of the calls between the business phone and Claimant's boyfriend were initiated by the boyfriend, not Claimant. (C.R., Item No. 15 at 36-41.) The Board further determined that Claimant was credible in testifying that she did not know when her boyfriend was calling the business phone,[4] and that, when he called, she never had conversations with him. Rather, she would place her boyfriend on hold while she attended to business, which explained the long duration of the calls on the phone record. Moreover, Claimant testified that she told her boyfriend not to call the business phone and, for a period, he stopped calling. (*Id.* at 22.) Claimant stated that she did *not* tell her boyfriend that his calling jeopardizes her job, however, noting that Employer only told her to *minimize* her personal calls at work. (*Id.* at 23.) The Board credited Claimant's testimony that Employer only told Claimant to "keep[] personal calls to a minimum." (C.R., Item No. 18 at 1-2.) Based on the foregoing, the Board concluded that Claimant's conduct as it concerns the business phone usage did not rise to the level of willful misconduct. We agree. While Employer argues that Claimant's actions in placing her boyfriend on hold prevented the business phone line from being open, there was no testimony that Claimant was aware it was her boyfriend on

---

[4] Claimant testified that her boyfriend's number would appear as anonymous, which prevented her from knowing it was him when she answered. (C.R., Item No. 15 at 21, 36-41.)

6

the phone when she put him on hold.[5] The Board also credited Claimant's testimony that many people were on hold due to the high number of calls. (C.R., Item No. 18 at 2.) In other words, Claimant's actions did not unreasonably prevent the business line from operating. Accordingly, we hold the Board did not err in concluding that Claimant's usage of the business phone did not rise to the level of willful misconduct.

We next consider the issue of Claimant's tardiness. On this point, the Board confined its findings to Claimant's tardiness on November 28, 2017, her last day of employment, yet concluded that, because Claimant notified Employer that she would be late due to traffic, Employer failed to demonstrate "a pattern of tardiness which rises to the level of willful misconduct." (C.R., Item No. 18 at 2-3.)

In *Grand Sport Auto Body*, we held that an individual's excused tardiness on the final day of work is *not* dispositive of the question of willful misconduct where the individual has a history of habitual tardiness. *Grand Sport Auto Body*, 55 A.3d at 192-94. Rather, we held that the focus of such an analysis should be on whether the claimant demonstrated a pattern and practice of habitual tardiness over a period of time.[6] *See id.* Based on the claimant's nineteen unexcused tardy episodes over a period of seven months, the Court in *Grand Sport Auto Body* concluded the

---

[5] While Employer's Employee Handbook (Handbook) requires that a receptionist "[a]sk permission before placing callers on hold," there was also no testimony regarding the Handbook and whether Claimant followed the procedures therein. (C.R., Item No. 11 at pages 24-25 of Handbook.)

[6] The Board argues in its brief that the main holding in *Grand Sport Auto Body* was conditioned on the fact that the employer there had already decided to terminate the claimant prior to his final excused tardy episode. (Resp't's Br. at 13-14.) We disagree with the Board's reading of the case. Rather, it is clear to this Court that the thrust of *Grand Sport Auto Body* is that a final excused tardy episode does not make up for a history of unexcused tardiness. Whether an employer decides to terminate an employee prior to a final, excused absence is irrelevant.

claimant's tardiness was habitual, excessive and below the standards of behavior an employer had a right to expect from an employee. *Id*. at 192.

While seeming to acknowledge the legal principle set forth in *Grand Sport Auto Body* that a pattern of tardiness can constitute willful misconduct, the Board nevertheless focuses its analysis on Claimant's tardiness on her last day of employment in disregard of evidence of a potential pattern of tardiness that could constitute willful misconduct.[7] Thus, it appears the Board misapprehended the law when it failed to issue findings of fact regarding a possible pattern of tardiness and to consider those findings in light of our holding in *Grand Sport Auto Body* to determine whether Claimant's tardiness constituted willful misconduct.

Accordingly, we must vacate the Board's order and remand the matter to the Board for the issuance of a new decision and order.

_____

P. KEVIN BROBSON, Judge

---

[7] The Board did not make any findings regarding Abolarin's testimony about earlier instances of Claimant's tardiness or a "letter punch time card," introduced into evidence by Employer, which purported to document forty-six instances of tardiness between August 11, 2017, and November 28, 2017—a period of three-and-a-half months. (C.R., Item No. 15 at 15-18, 42-44.) Abolarin testified that he warned Claimant about her habitual tardiness at a meeting on November 2, 2017, and that he had warned Claimant about her tardiness even before then. (*Id*. at 16-17.) Eight of the aforementioned forty-six tardy episodes came after November 2, 2017, which was the date of Employer's meeting with Claimant. (*Id*. at 42-44.) In addition, Abolarin testified that Claimant had provided excuses in the past regarding *some* of her lateness, including car issues, traffic, or accidents, but he stated there were too many excuses and too often for them to be plausible. (*Id*.) Abolarin also testified that Claimant's habitual tardiness, not her tardiness on her final day of work, was the cause for her termination. (*Id*. at 15-19.)

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Amazing Grace Dental, : 
                 Petitioner : 
                  : 
         v. : No. 1143 C.D. 2018
                  : 
Unemployment Compensation : 
Board of Review, : 
                 Respondent : 

# O R D E R

AND NOW, this 25th day of March, 2021, the order of the Unemployment Compensation Board of Review (Board) is VACATED, and the matter is hereby REMANDED to the Board for the issuance of a new decision and order.

Jurisdiction relinquished.

_____

P. KEVIN BROBSON, Judge

Amazing Grace Dental,               :
                         Petitioner      :
                                      :
              v.                   :
                                      :
Unemployment Compensation  :
Board of Review,              :   No. 1143 C.D. 2018
                  Respondent   :   Submitted: August 7, 2020

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                       FILED:  March 25, 2021

Respectfully, I disagree with the Majority's conclusion that "the [Unemployment Compensation Board of Review (UCBR)] did not err in concluding that [Atildah Conteh's (Claimant)] usage of the business phone did not rise to the level of willful misconduct." *Amazing Grace Dental v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 1143 C.D. 2018, filed March 25, 2021), slip op. at 6. Because Claimant's boyfriend frequently called her at work and she would place him on hold for 20 or more minutes at a time, Claimant's repeated use of Amazing Grace Dental's (Employer) phone line after having been warned was a disregard of the standards of behavior that Employer rightfully could expect from its employee. Accordingly, I would reverse the UCBR's order.

On April 3, 2017, Employer hired Claimant as a full-time receptionist. Employer discharged Claimant for, *inter alia*, tying up Employer's phone lines by placing her boyfriend on hold for significant amounts of time. The UCBR concluded that Claimant's actions did not rise to the level of willful misconduct because it could

not impute the actions of Claimant's boyfriend on Claimant. The Majority affirms this reasoning, citing *Keg & Butcher Block v. Unemployment Compensation Board of Review*, 450 A.2d 782 (Pa. Cmwlth. 1982). Therein, the employer, a restaurant, hired the claimant as its general manager. The employer discharged the claimant because the claimant's wife (Wife) called the employer's cashier, chastised the cashier for not alerting the claimant about a meeting of the employer's owners that took place without the claimant, and threatened her job if it ever happened again. Because the UCBR found as a fact that Wife made the call on her own, and her actions could not be imputed to the claimant, this Court concluded that the claimant did not commit willful misconduct.

Here, Claimant testified that her boyfriend called Employer's phone to check up on her. She admitted that she knew it was against Employer's rules, but nonetheless never told her boyfriend that his calling jeopardized her job. Further, notwithstanding that the calls came through as "anonymous," Claimant answered the phone; thus, she knew it was him when she placed the calls on hold. Unlike the claimant in *Keg & Butcher Block*, Claimant herein was aware of the frequency of her boyfriend's calls, knew it was against Employer's rules, did not tell her boyfriend to stop calling and used Employer's phone lines for personal use when she placed her boyfriend on hold for extended periods. Thus, *Keg & Butcher Block* is inapposite.

It appears the Majority believes that, because the UCBR found as a fact that "[C]laimant did not know when her boyfriend was calling the office because the number would appear as anonymous[,]" UCBR Dec. at 1, Finding of Fact 4, this Court is prevented from concluding that Claimant's conduct was willful misconduct. I agree with and, as I must, accept the UCBR's finding of fact. However, that finding has nothing to do with the crux of Claimant's willful misconduct which is she admitted when she answered the phone and learned it was her boyfriend, instead of hanging up the phone in order to keep Employer's phone lines open, she would place him on hold

for 20 or more minutes, thereby tying up Employer's phone line. In addition, Claimant admitted she knew putting her boyfriend on hold was a violation of Employer's rules, but she never told him that his calling was a violation or that it jeopardized her job. *See* Reproduced Record (R.R.) at 136a.[1]

The Majority states:

> Claimant testified that she told her boyfriend not to call the business phone and, **for a period**, **he stopped calling**. ([*See* R.R. at 135a.) Claimant stated that she did *not* tell her boyfriend that his calling jeopardizes her job, however, noting that Employer only told her to *minimize* her personal calls at work. (*See* R.R. at 136a.) The [UCBR] credited Claimant's testimony that Employer only told Claimant to 'keep[] personal calls to a minimum.' ([Certified Record], Item No. 18 at 1.) Based on the foregoing, the [UCBR] concluded that Claimant's conduct as it concerns the business phone usage did not rise to the level of willful misconduct.

*Amazing Grace Dental*, slip op. at 6 (emphasis added). However, although Claimant testified that she told her boyfriend to stop calling and he did so, the record belies her testimony. Specifically, according to the testimony, Employer spoke to Claimant about the phone calls on November 2, 2017. *See* R.R. at 124a. The phone records show multiple calls from Claimant's boyfriend's phone number on Friday, November 3, 2017, every day the following week, every day but Tuesday the week after, and with the exception of Thanksgiving day, virtually every day, up to and including, her last day of work. *See* R.R. at 149a-152a. Notwithstanding the Majority's above-quoted statements, the UCBR did not make a finding of fact that Claimant told her boyfriend to stop calling and he temporarily did so.[2]

---

[1] Employer did not number the pages in the reproduced record using a lower case "a" after the arabic numbers, as required by Pennsylvania Rule of Appellate Procedure 2173. The Dissent will cite to the reproduced record in the proper format.

[2] Claimant testified:

The Majority further states: "[T]here was no testimony that Claimant was aware it was her boyfriend on the phone when she put him on hold." *Amazing Grace Dental*, slip op. at 6-7. However, there was no testimony that Claimant did not know it was her boyfriend when she put him on hold. Indeed, when asked by the Referee, "So did your boyfriend call and you put him on hold?," Claimant merely responded: "Correct, multiple times." R.R. at 135a. Moreover, the UCBR credited Claimant's testimony that she "would place him on hold." UCBR Dec. at 2.

A review of Employer's Handbook makes it clear that Claimant was aware it was her boyfriend when she placed him on hold. Specifically, Employer's Handbook expressly provided, in relevant part:

RECEPTION

- Greet each patient or caller with a smile. **When answering the telephone**, **begin with** '[**Employer**], (your first name)

---

R[:] Okay. Did you tell him to stop calling you at work because you were being talked to by the Employer?
C[:] Yes.
R[:] All right. Did he continue to call you at work?
C[:] No, he had stopped.
R[:] Okay. The Employer's telling me that they have -- when did he stop?
C[:] Can I see the day...
R[:] No, tell me -- you said he had stopped. . .
C[:] I don't know . . .
R[:] . . . when did he stop?
C[:] . . . exactly when[?] I'm sorry, I don't know the exact dates.
R[:] Okay. Because the Employer is showing me documents that as the last call is coming up on November 27, 2017. There is no duration, so it was missed. Was he trying to -- was your boyfriend trying to call you on that date?
C[:] If the number's there, I believe so.
R[:] Okay.
C[:] Yeah.
R.R. at 135a.

> **speaking**, **how may I help you**?[']   Offer a sincere explanation for appointment delays, and let patients know that they are welcome in the office.
>
> - Allow the patient or caller to explain the reason for their call or visit without interrupting.
>
> - Speak professionally and pleasantly despite occasional pressures and avoid slang or dental jargon. **Ask permission before placing callers on hold**.

R.R. at 99a-100a (emphasis added).  Thus, based on Employer's protocols, Claimant was aware it was her boyfriend when she placed him on hold for 20 or more minutes, thereby tying up Employer's phone line.

In fact, in its decision, the UCBR acknowledged the same, wherein it stated: "[E]mployer provided phone records indicating several calls from the same number.  [] [C]laimant does not contest that this number [i]s her boyfriend's phone number."  UCBR Dec. at 2.  The UCBR continued: "The [UCBR] acknowledges that some of [the] calls on the employer phone record continued for the duration of twenty or more minutes.  However, [] [C]laimant addressed this by explaining that she would place him on hold as she did with everyone due to the high volume of calls."  *Id*. Despite Claimant knowing not to use Employer's phone for personal use, and knowing the high volume of incoming calls, she used Employer's phone line by placing her boyfriend on hold instead of hanging up, thus continuing to tie up Employer's phone line by leaving him on hold for 20 or more minutes.

The impact of Claimant's willful misconduct by her disregarding the standards of behavior that Employer rightfully could expect was clearly revealed through Employer's owner Andrew Abolarin (Abolarin), who testified that "a patient had called [him] and said[,] every time I call your office the line is always busy."  R.R. at 122a.

The Majority concludes that because "[t]he [UCBR] also credited Claimant's testimony that many people were on hold due to the high number of calls . . . Claimant's actions did not unreasonably prevent the business line from operating." *Amazing Grace Dental*, slip op. at 7. This conclusion does not line up with Employer's testimony. When asked by the Referee, "What happened that you got [the phone records] on that day?," Employer responded: "Patient[s] telling me they've been calling[,] and they've been put[] on hold. And I -- actually two patients had said that to me." R.R. at 125a. The fact that Employer receives so many calls clearly demonstrates how Claimant adversely affected Employer's practice by tying up Employer's phone line when she placed her boyfriend on hold for extended periods.

Moreover,

[t]here is no question that Claimant's conduct was not merely negligent but rather of an intentional and deliberate nature. *Grieb v. Unemployment Comp*[.] *B*[*d.*] *of Rev*[.], . . . 827 A.2d 422, 426 ([Pa.] 2003) . . . . [T]his Court has on numerous occasions determined that a claimant's use of work time to engage in personal affairs without authorization was willful misconduct even where not prohibited by a specific work rule because it was contrary to reasonable standards of behavior that an employer can expect from its employees. *See, e.g.*, *Pettyjohn v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 863 A.2d 162, 165 (Pa. Cmwlth. 2004) (holding that access of internet for personal reasons during working hours after being advised not to constituted willful misconduct); *Baldauf v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 854 A.2d 689, 692 (Pa. Cmwlth. 2004) (holding that the claimant engaged in willful misconduct by accessing personal email and non-work related websites while being paid to work)[.] Furthermore, '[a] conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in . . . cases where . . . the employee has been warned and/or reprimanded for prior similar conduct.' *Ellis v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 59 A.3d 1159, 1163 (Pa. Cmwlth. 2013) (quoting [*Dep't*] *of Transp*[.] *v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 479 A.2d 57, 58 ([Pa. Cmwlth.] 1984)).

AEC - 6

*Oyetayo v. Unemployment Comp. Bd. of Rev.*, 110 A.3d 1117, 1124-25 (Pa. Cmwlth. 2015) (citation omitted).

For all of the above reasons, I would reverse the UCBR's order.

_____
ANNE E. COVEY, Judge